**Robert W. RAINES, Donna J. Raines, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 657–84C.

United States Claims Court.

June 19, 1987.

sel, with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

SETO, Judge.

This action comes before the court on defendant's motion to dismiss for lack of jurisdiction, or in the alternative, for summary judgment. Plaintiffs claim breach of a payment-in-kind (PIK) contract and seek relief in the form of wheat, diversion payments, treatment and storage costs, and damages that resulted from the alleged breach. This motion raises three issues: (1) whether plaintiffs' claim seeks injunctive relief and therefore is outside our jurisdiction; (2) whether judicial review has been precluded by statute; and (3) whether defendant is estopped from asserting defenses on the breach of contract claim. For the reasons discussed below, the court finds that plaintiffs' claim is within our jurisdiction and subject to limited judicial review. On review, we hold that the administrative decision withstands judicial scrutiny and should not be overturned on the grounds that it was arbitrary, capricious or without a rational basis. Moreover, plaintiffs have not demonstrated the requisite elements for estoppel, and defendant, raising its legal defense, is entitled to summary judgment on the merits.

## BACKGROUND

This action arises from plaintiffs Robert W. and Donna J. Raines' participation in the 1983 payment-in-kind or PIK program through a contract between plaintiffs and the Commodity Credit Corporation, an agency of the United States. The PIK program was conducted in accordance with the Agricultural Act of 1949 (1949 Act), *as amended,* 7 U.S.C. § 1421 *et seq.* (1982), the Commodity Credit Corporation Charter Act (CCC Charter Act), *as amended,* 15 U.S.C. § 714 *et seq.,* and the implementing regulations promulgated thereunder, 7 C.F.R. Parts 713 and 770. In essence, the PIK program provided agricultural commodities to participant producers who in

A. Gary Bell, Jr., Littleton, Colo., for plaintiffs.

Denise Butler Harty, Washington, D.C., Ralph Lunden, Washington, D.C., of coun-

exchange agreed not to plant those commodities on designated acreage during the 1983 growing year. The Secretary of Agriculture, acting through the Commodity Credit Corporation (CCC), instituted the PIK program to enhance market prices of major farm commodities and to reduce government storage expenses.[1]

Under the PIK program, the Department of Agriculture entered into contracts with farmers who agreed to devote to a conserving use, i.e., set aside, acreage normally planted in certain commodities. In return, the government compensated farmers with "payment-in-kind" in the form of the commodity that the farmer would otherwise have planted and harvested. 7 C.F.R. § 770.1(a) (1984) (first published in 48 Fed. Reg. 1696 (1983)). The payment to the farmer was calculated by multiplying the commodity yield (as determined by Part 713 of 7 C.F.R.) by the acreage devoted to a conserving use, and then multiplying that product by 95 percent for wheat or 80 percent for other commodities. *Id.* § 770.-3(a)(1). Payment as determined by this formula was to be made within five months of the normal harvest date for the commodity in that farm area. *Id.* § 770.3(a)(3).

In addition to the program described above, another PIK program was implemented, which provided that 100 percent of a farm's acreage base for a designated commodity could be devoted to an approved conserving use. *Id.* § 770.2(a)(2)(ii). Under this program, the farmer received a cash payment of 5 percent of the farm's wheat acreage base and a PIK payment for 95 percent of the base. A contract for this "100 percent PIK" was awarded by competitive bid, and the percentage of the established yield could not exceed 95 percent for wheat.

### FACTS

On March 10, 1983, plaintiffs executed a contract to participate in the 1983 wheat PIK program. At that time, the county office of the Agriculture Stabilization and Conservation Service (ASCS) determined plaintiffs' PIK compensation to be 61,476 bushels of wheat. *See* Plaintiffs' Exhibit A. It is not disputed that plaintiffs complied with the terms of the contract by destroying wheat that they had planted as required under the terms of the agreement. *See* Plaintiffs' Response at 9. On October 20, 1983, the ASCS county office, after correcting an error in the original calculation, reduced the amount of wheat due plaintiffs to 39,121 bushels. The error was attributed to a miscalculation made by ASCS personnel in determining the blended yield average for plaintiffs' farm. Plaintiffs contend that their decision to participate in the PIK program was based solely on the original figures, and they would not have participated had they been quoted the lower amount at the time they entered into the contract.

Plaintiffs, after learning of the error made in calculating average yield, requested, as provided for in 7 C.F.R. Parts 780 [2]

**1.** The Secretary of Agriculture has authority to determine and approve price support operations and the extent to which those operations are carried out. *See* 7 U.S.C. § 1421(b)(1982). The CCC, a wholly-owned federal corporation that is supervised by the Secretary of Agriculture, was created to stabilize, support, and protect farm income and prices, to assist in maintaining balances and adequate supplies of agricultural commodities, and to facilitate their distribution. *See* 15 U.S.C. § 714 (1982). To fulfill this purpose, the CCC is empowered to "[r]emove and dispose of or aid in the removal or disposition of surplus agricultural commodities." 15 U.S.C. 714c(d) (1982). The CCC's administration of the price support programs is delegated to the Department of Agriculture's Administrator, Agricultural Stabilization and Conservation Service (ASCS). *See* 7 C.F.R. § 2.65(a) (1983).

Three levels of authority exist under the ASCS: county, state, and federal. As provided in 16 U.S.C. § 590h(b) (Supp.1985), farmers within a county elect persons to the county ASCS committee. That committee administers at the local level commodities programs by entering into farm program contracts and determining program eligibility. The state ASCS committee, made up of three to five farmers appointed by the Secretary of Agriculture, supervises the county committees and administers programs on a state-wide basis. At the federal level, the Deputy Administrator, State and County Operations (DASCO) supervises the state committees.

**2.** Part 780 sets forth regulations providing that participants who are dissatisfied with determinations made at the county, state, or federal

and 790 [3], that the ASCS officials reconsider their decision to adjust the PIK compensation. The county committee determined that the original contract terms should be honored, *see* Plaintiff's Exhibit F at 127, and the state committee upon reconsideration also determined that the original terms should be upheld and plaintiffs were entitled to receive the higher quantity. *See id.* at 134. The decision was then brought before the Deputy Administrator, State and County Operations (DASCO) for review, which resulted in a denial of the original terms of plaintiffs' PIK contract. *See id.* at 135. Plaintiffs sought reconsideration of the adverse DASCO decision and after an informal hearing in Washington, D.C., the appeal was denied. *See id.* at 146.

Having exhausted their administrative remedies at the federal DASCO level of review, *see* 7 C.F.R. Part 780 (1983), plaintiffs filed an action in federal district court. *See* Plaintiffs' Exhibit B. Defendant successfully moved to transfer the action to the Claims Court, where it asserted that exclusive jurisdiction of this contract dispute lies. *See* Plaintiffs' Exhibit D.

As bases for its motion to dismiss or in the alternative for summary judgment, defendant asserts that: (1) the CCC Charter Act's anti-injunction provisions preclude the relief plaintiffs seek and we therefore lack jurisdiction; (2) review of ASCS determinations has been precluded by statute; and (3) defendant is not estopped from asserting defenses. We address each theory in turn.

level may obtain reconsideration and an informal hearing by filing a request. An adverse decision at one level may be appealed at the next level (e.g., county ASCS determination appealed to state ASC committee), and DASCO's determination is the final administrative action on the matter.

3. Part 790 provides that ASCS officials may accept good faith reliance on a representative's advice as meeting the requirements of price support programs, but the authority does not extend to cases where the farmer knew or had reason to know that reliance was erroneous or

# DISCUSSION

## I. *Does CCC Charter Act Preclude Relief Plaintiffs Seek*

Defendant moves to dismiss on the ground that plaintiffs' claim is one for "equitable relief in the form of specific performance," and asserts that this court lacks jurisdictional authority to grant the relief plaintiffs seek, as our jurisdiction is limited to actions seeking money judgments. In support of this assertion defendant cites *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1968); *United States v. Sherwood*, 312 U.S. 584, 588, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941); *Richardson v. Morris*, 409 U.S. 464, 465, 93 S.Ct. 629, 630, 34 L.Ed.2d 647 (1973) (per curiam) ("Court of Claims has no power to grant equitable relief") (citing *Glidden Co. v. Zdanok*, 370 U.S. 530, 557, 82 S.Ct. 1459, 1476, 8 L.Ed.2d 671 *reh'g denied*, 371 U.S. 854, 83 S.Ct. 14, 9 L.Ed.2d 93 (1962) ("From the beginning [the Court of Claims] has been given jurisdiction only to award damages, not specific relief")). Defendant asserts that the anti-injunction provision of the CCC Charter Act, 15 U.S.C. § 714b(c) [4] precludes the remedy plaintiffs seek as well. The limited waiver of sovereign immunity in section 714b(c), defendant contends, goes no further than the terms of the statute, *see United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976), and courts have held without qualification that the CCC is immune from injunctions. *See Stroud v. Benson*, 254 F.2d 448, 450 (4th Cir.1958), *cert. denied*, 358 U.S. 817, 79 S.Ct. 28, 3 L.Ed.2d 59 (1958); *Moon v. Freeman*, 245 F.Supp. 837, 839 n. 3 (E.D.Wash.1965).

based on his own misunderstanding. Any person who feels entitled to consideration under these provisions may request consideration from the county committee.

4. Section 714b(c) provides that the Commodity Credit Corporation:

> May sue and be sued, but no attachment, *injunction*, garnishment, or other similar process, mesne or final, shall be issued against the Corporation or its property.

15 U.S.C. § 714b(c) (1982) (emphasis added).

Plaintiff contends in opposition to defendant's motion that the action does indeed seek a monetary judgment, as is clear from plaintiff's complaint, and therefore the anti-injunction provision of the CCC Charter Act does not preclude the relief sought. Further, plaintiff points out that this court has jurisdiction to grant limited and incidental equitable relief. 28 U.S.C. § 1491(a)(2) (1982); *Pauley Petroleum Inc. v. United States,* 219 Ct.Cl. 24, 37–38, 591 F.2d 1308, 1315–16, *cert. denied,* 444 U.S. 898, 100 S.Ct. 206, 62 L.Ed.2d 133 (1979); *Metadure Corporation v. United States,* 490 F.Supp. 1368, 1371 (S.D.N.Y.1980). For the reasons discussed below, we agree with in part with plaintiffs and in part with defendant, and find that section 714b(c) does not preclude this action, but plaintiffs are limited to monetary relief.

The issue that must be resolved first is whether plaintiffs state a claim for relief that is cognizable in this court. The claim is clearly based on a contract and plaintiffs seek damages suffered as a result of an alleged breach of that contract. Plaintiffs ask the court to give effect to the original but apparently incorrect terms of the contract, stating that they relied on greater PIK compensation in deciding to enter into the contract, and had they been offered the lesser compensation, they would not have so contracted. Although plaintiffs do not use the term "promissory estoppel" in describing their basis for relief, that reasoning seems to underlie their efforts to enforce the original contract terms, in addition to their breach theory. This court, however, has not extended its jurisdiction to contract claims founded on a theory of promissory estoppel. *See Jablon v. United States,* 657 F.2d 1064, 1069–70 & n. 9 (9th Cir.1981); *Schuhl v. United States,* 3 Cl.Ct. 207, 211 (1983); *Biagioli v. United States,* 2 Cl.Ct. 304, 308 (1983).

■ Aside from the misguided theory that defendant should be held to the initial terms of the contract as a result of plaintiff's reasonable reliance, the question presented is whether plaintiffs seek a remedy that this court has the power to grant. Defendant commits a fundamental error in characterizing plaintiffs' claim as one for injunctive relief. This case is readily distinguishable from those cases involving the CCC in which injunctive relief was sought. *See Iowa ex rel. Miller v. Block,* 771 F.2d 347, 348 n. 1 (8th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 3312, 92 L.Ed.2d 725 (1986) (pursuant to 15 U.S.C. § 714b(c) anti-injunction provision, Secretary of Agriculture cannot be compelled to implement discretionary relief programs when benefits would be administered by CCC); *Mitchell v. Block,* 551 F.Supp. 1011, 1015 (W.D. Va.1982) (section 714b(c) does not estop the court from enjoining Secretary of Agriculture from doing arbitrary and capricious act). Plaintiffs do not seek to compel, prevent, or enjoin any action by the government, but rather they seek damages under a contract that they allege the government breached. Therefore, the anti-injunction provision, section 15 U.S.C. § 714b(c), does not preclude the relief plaintiffs seek, that being contract damages.

■ To remedy the breach of the PIK contract, plaintiffs ask for two forms of relief: money and wheat. Plaintiffs' claim for money is sufficient to invoke our jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1982). *See* Plaintiff's Complaint at 11 (seeking diversion payment, storage payment, treatment payment and damages of $27.69 per day since October 1983). The more troublesome question is whether plaintiffs' claim for 22,355 bushels of wheat can be construed to fall within this court's jurisdiction, or, in other words, can the court of its own volition convert a claim for wheat to a claim for money damages. Plaintiffs did not choose this forum but their claim was transferred here at defendant's motion; apparently, they failed to read *King,* 395 U.S. at 2–3, 89 S.Ct. at 1501–02, before they filed their complaint in this court and were not aware that our jurisdiction is limited to awarding money judgments against the government. Since the wheat that plaintiffs seek to recover is no longer available, we could presume that plaintiffs seek the monetary equivalent of 22,355 bushels of wheat determined at the 1983 prices, as another judge on this court has. *See Gibson v. United States,* 11 Cl.Ct. 6, 11 (1986) (noting court's jurisdic-

tion only to enter money judgment and interpreting claim for corn as money claim). In *Gibson*, the court stated that it was not "crystal clear" from plaintiff's written submissions whether corn or its monetary equivalent was sought, and the court chose to presume that plaintiff knew the bounds of our remedial power and sought the monetary equivalent of 3,395 bushels of corn. *See* 11 Cl.Ct. at 11. We, however, chose not to make this leap on plaintiffs' behalf in light of plaintiffs' unequivocal and unrelenting requests for wheat allegedly due under the original contract terms. Moreover, the language of 28 U.S.C. § 1491(a)(2) does not purport to authorize our exercise of injunctive power in the present scenario. Section 1491(a)(2), providing for incidental relief, is limited to "orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records." Therefore, plaintiffs' claim for the wheat due under the original contract term cannot be maintained in this court, since that remedy falls outside our incidental equitable powers and cannot be construed as a claim for money judgment. *See King*, 395 U.S. at 5, 89 S.Ct. at 1503; *Austin v. United States*, 206 Ct.Cl. 719, 723 (affirmative nonmonetary relief must be tied to and subordinate to monetary award), *cert. denied*, 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975); *Michienzi v. United States*, 207 Ct.Cl. 484, 492 (1975) (declaratory order must be incidental to pecuniary remedy). Plaintiffs' monetary claims, however, are properly before the court and shall not be dismissed.

## II. *Is Judicial Review of Secretary of Agriculture's Decision Available*

As further grounds for dismissal, defendant asserts that 7 U.S.C. §§ 1429[5] and 1385[6] preclude judicial review in this court of the administrative determinations made regarding plaintiffs' PIK contract claim and thus plaintiffs are bound by the adverse DASCO decision denying their claim. Citing section 1429, defendant asserts that judicial review in the instant case is limited to determinations under the 1949 Act that are *not* consistent with the CCC Charter Act. This position, defendant contends, is consistent with the few cases interpreting section 1429, such as *Carruth v. United States*, 224 Ct. Cl. 422, 437, 627 F.2d 1068, 1076 (1980). Defendant also recounts the legislative history of the 1949 Act, asserting that the original language of the Senate bill provided that determinations of the Secretary were to be final and conclusive without regard to the CCC Charter Act, and that granting this broad expanse of power to the Secretary of Agriculture was necessary to maintain the price support system. *See* 95 Cong.Rec. 13779 (1949), *reprinted in* 1949 U.S.Code Cong. & Ad. News 2407, 2415–16. Defendant asserts that section 1385 provides overlapping denial of judicial review of factual determinations but cites no cases interpreting section 1385. In conjunction with asserting statutory preclusion of review under sections 1429 and 1385, defendant denies any procedural infirmities that could provide a basis for review. *See Lindahl v. Office of Personnel Management*, 470 U.S. 768, 791, 105 S.Ct. 1620, 1633, 84 L.Ed.2d 674 (1985).

Plaintiffs contend to the contrary that neither section 1429 nor section 1385 preclude review of *legal* determinations made by administrative bodies. *Jones v. Hughes*, 400 F.2d 585, 589 (8th Cir.1968) (facts constituting basis for payments are final and

---

5. Section 1429 provides in pertinent part:
 Determinations made by the Secretary under this Act shall be final and conclusive: *Provided*, That the scope and nature of such determinations shall not be inconsistent with the provisions of the Commodity Credit Corporation Charter Act.
 7 U.S.C. § 1429 (1982) (emphasis in original).

6. Section 1385 provides in pertinent part:
 The *facts* constituting the basis for any ... payment under the ... feed grain ... programs authorized by the Agricultural Act of 1949 ... any loan or price support operation, or the amount thereof, when officially determined in conformity with the applicable regulations prescribed by the Secretary or by the Commodity Credit Corporation, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government.
 7 U.S.C. § 1385 (1982) (emphasis added).

unreviewable under section 1385); *Garvey v. Freeman*, 397 F.2d 600, 604–05 (10th Cir.1968) (section 1385 does not preclude review of legal determinations or review for procedural sufficiency). Plaintiffs also aver that this action arises from a breach of contract, and thus the court should not be constrained from reviewing the merits of plaintiffs' breach claim. Further, plaintiffs contend that 7 C.F.R. § 790.2 (1983)[7] provides an independent basis for review in this case.

For the following reasons, we find that plaintiff's claim is subject to judicial review and defendant's motion to dismiss cannot be granted on this ground. Further, we find that on review, the DASCO decision shall not be overturned.

First, defendant errs in contending that section 1429, as interpreted in *Carruth*, 224 Ct.Cl. at 437, 627 F.2d at 1076, shields administrative decisions from this court's review. As 5 U.S.C. § 701(a) (1982) of the Administrative Procedure Act provides, judicial review is exempted when either a statute precludes judicial review or when agency action is committed to agency discretion by law. In this situation, sections 1429 and 1385 limit, but do not preclude judicial review, and therefore we find defendant's argument for denying judicial review unavailing.[8] Our role in reviewing administrative determinations under sec-

tion 1429 is concededly "very limited," but not nonexistent: we need not consider the wisdom of the decisions, but must scrutinize whether the officials acted rationally and within their statutory authority. *See Carruth*, 224 Ct.Cl. at 437, 627 F.2d at 1076; *see also Iowa ex rel. Miller v. Block*, 771 F.2d at 348 n. 1 (section 1429 does not immunize Secretary of Agriculture's actions from judicial review); *Gonzalez v. Freeman*, 334 F.2d 570, 575 (D.C.Cir.1964) (section 1429 does not confer unreviewable finality regarding scope of authority or procedural safeguards). The scope of review delineated in *Carruth* comports with the Supreme Court's decision *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415–17, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971) (judicial review of informal agency action should establish authority of agency action, whether correct factors were considered, whether decision was arbitrary, capricious, or an abuse of discretion, and that necessary procedural requirements were followed). We are not, however, required to conclude that the administrative bodies reached the same result we may have, were we to consider the merits. *See Nabisco, Inc. v. United States*, 220 Ct.Cl. 332, 340, 599 F.2d 415, 419 (1979); *Port Authority of St. Paul v. United States*, 193 Ct.Cl. 108, 120, 432 F.2d 455, 461 (1970).

7. Section 790.2 provides in pertinent part:

(a) Notwithstanding any other provision of law, performance rendered in good faith in reliance upon action or advice of any authorized representative ... *may* be accepted ... as meeting the requirements of the applicable program, and price support may be extended or payment may be made therefor in accordance with such action or advice to the extent it is deemed desirable in order to provide fair and equitable treatment.

(b) The provisions of this part shall be applicable only if a producer relied upon action or advice of a county or State committee or an authorized representative of such committee in rendering performance which the producer believed in good faith met the requirements of the applicable program. The authority provided in this part does not extend to cases where the producer knew or had sufficient reason to know that the action or advice of the committee or its authorized representative upon which he relied was improper or erroneous, or where the producer acted in reliance

on his own misunderstanding or misinterpretation of program provisions, notices or advice.

7 C.F.R. § 790.2(a) (1983) (emphasis added).

8. The Supreme Court has most recently expressed the test for preclusion of judicial review in *Block v. Community Nutrition Institute*, 467 U.S. 340, 351, 104 S.Ct. 2450, 2456, 81 L.Ed.2d 270 (1984), as "where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling," but that presumption is overcome whenever "congressional intent to preclude judicial review is 'fairly discernible' in the detail of the legislative scheme" (quoting *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 157, 90 S.Ct. 827, 831, 25 L.Ed.2d 184 (1970)). We do not find, nor have the cases interpreting sections 1429 and 1385 found, that an intent to preclude judicial review is "fairly discernible." Defendant's argument that judicial review has been precluded therefore lacks merit.

Defendant also errs in asserting that section 1385 precludes judicial review of the administrative decisions made in the course of this case. Clearly on its face, section 1385 purports that only properly-reached *factual* determinations are final, conclusive and unreviewable. *See United States v. Batson*, 782 F.2d 1307, 1311–12 (5th Cir.1986), *cert. denied*, — U.S. —, 106 S.Ct. 3277, 91 L.Ed.2d 567 (1986) (section 1385 accords finality only to findings of fact that constitute basis for program payments and legal questions are subject to review). Legal determinations are subject to review under section 1385. *See Gross v. United States*, 205 Ct.Cl. 605, 618, 505 F.2d 1271, 1279 (1974) (questions of law, including whether a decision is arbitrary and capricious, are subject to judicial review under section 1385); *King v. Bergland*, 517 F.Supp. 1363, 1365–66 (D.Colo. 1981) (scope of review under section 1385 limited to determining that agency considered relevant factors and that rational basis for decision exists). Thus, even accepting the factual findings of the administrative bodies as conclusive, the court may determine whether denying plaintiffs the benefit of the higher PIK compensation gives rise to a breach of contract, which is a legal, not a factual, determination. *See Pettersen v. United States*, 10 Cl.Ct. 194, 197 (accepting factual findings as conclusive under section 1385 does not preclude court from determining whether facts give rise to contract breach, which is legal question), *aff'd*, 807 F.2d 993 (Fed.Cir.1986).

Applying these guiding principles of the scope of review required under sections 1429 and 1385 to the administrative record before us, we conclude that nothing requires us to disturb the agency decision.

As explained above in footnotes 1 and 2, the Secretary of Agriculture, CCC, DASCO and ASCS form a chain of delegated authority to administer price support and related farm programs. Therefore, DASCO was within the bounds of its authority in reducing the amount of plaintiff's PIK compensation upon discovering the error, and in refusing to enforce the original terms of the contract. The DASCO decision to deny plaintiffs' claim was no doubt based on the unreviewable factual determination that plaintiff's reliance on the original but erroneous terms was not reasonable. DASCO determined that based upon normal wheat production on plaintiffs' land and the proven yield for irrigated and dry land, plaintiffs had reason to doubt the accuracy of the initial PIK entitlement. *See* Defendant's Appendix at 27. In addition, the PIK contract that plaintiffs signed and presumably read provided the regulations governing the PIK program and an explanation of the definition of farm yield upon which the grain allotment was based.[9] Moreover, plaintiffs were given a full opportunity to present evidence on the reasonableness of their reliance, and did so with affidavits that were considered in the appeal to DASCO. *See* Plaintiffs' Exhibit F at 140–45. We are satisfied that DASCO considered all the relevant information and find no evidence showing that the decision was arbitrary, capricious, lacking a rational basis, or an abuse of discretion, nor has plaintiff alleged or proved procedural errors. Accordingly, no basis exists for overturning DASCO's decision, since the decision was reached in accord with agency authority and procedure. Taking the facts as final, specifically the finding that plaintiffs unreasonably relied on the PIK computation, we cannot apply the law in any manner that would entitle plaintiffs to the benefit of the original contract terms. We note that had DASCO found plaintiff's reliance reasonable, 7 C.F.R. § 790.2 arguably could have applied to provide plaintiffs the benefits that they had agreed to under the original contract terms. Section 790.2, however, is discretionary, and it is not within our realm to fault DASCO for choosing not to apply that provision to this case.

---

9. Defendant asserts that the error resulted from multiplying nonirrigated yield by irrigated acreage, and irrigated yield by nonirrigated acreage, rather than irrigated yield by irrigated acreage, and nonirrigated yield by nonirrigated acreage, thereby establishing a yield that was not representative of plaintiffs' farm. *See* Defendant's Brief at 24–25.

III. *Is the Government Estopped from Asserting Defense*

Plaintiffs seek to estop defendant from asserting the defense recognized in *Federal Crop Insurance Corporation v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947), namely, that the government cannot be bound by the unauthorized acts of its agent, and clearly the ASCS county officer's representation, or misrepresentation, as it were, of the higher yield amounts were unauthorized since they were not in accordance with the governing regulations. *See also People's Bank & Trust Co.*, 7 Cl.Ct. 665, 668 (1985); *Prestex, Inc. v. United States*, 3 Cl.Ct. 373, 377 (1983), *aff'd*, 746 F.2d 1489 (Fed.Cir.1984). Plaintiffs seek to distinguish the facts of their case from *Merrill* and in addition disrepute the holding of *Merrill*, contending that the government cannot use *Merrill* as an "excuse for not living up to its contract." · We disagree with plaintiffs and would find *Merrill* dispositive in this action, were we not inclined to uphold the DASCO decision on review, as discussed in part II of this opinion.

 First, plaintiffs have clearly failed to demonstrate that the traditional elements of estoppel are present. *See Pratte v. National Labor Relations Board*, 683 F.2d 1038, 1041 (7th Cir.1982) (estoppel applies if governmental actions amount to affirmative misconduct and four requirements met); *TRW, Inc. v. Federal Trade Commission*, 647 F.2d 942, 950–51 (9th Cir. 1981) (same); *People's Bank & Trust Co. v. United States*, 7 Cl.Ct. at 668–69. The traditional elements of estoppel are: (1) the party to be estopped must know the facts; (2) it must intend that its conduct shall be acted on or must so act that the party asserting estoppel has a right to believe it is so intended; (3) the party asserting estoppel must be ignorant of the true facts, and (4) it must rely on the conduct of the former to its injury. *Emeco Industries, Inc. v. United States*, 202 Ct.Cl. 1006, 1015, 485 F.2d 652, 657 (1973); *United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir.1970); *Pacific Gas & Electric Co. v. United States*, 3 Cl.Ct. 329, 340 (1983), *aff'd*, 738 F.2d 452 (Fed.Cir.1984). Apply

these elements to the facts presented in this case, it is apparent that the government's action in this case does not rise to a level of "affirmative misconduct." The ASCS official made a simple, although doubtless important, error in calculating plaintiffs' blended yield. Plaintiffs, however, were apparently notified of the error when it was discovered. Plaintiffs have not shown that the ASCS official knew the facts, and indeed, plaintiffs seem to concur that an error in calculation was committed. Addressing the second and and third element, presumably the ASCS official intended that plaintiffs' would act on the error, and plaintiffs may possibly have been ignorant of the facts. The final element for estoppel, is reasonable documented reliance; we have already noted that DASCO has finally determined that plaintiffs' reliance on the original terms was *not* reasonable. We therefore conclude that not all the elements of estoppel have been shown and therefore the government is not estopped from asserting its *Merrill* defense.

Plaintiffs fail also to distinguish *Merrill* from the instant action. The cases plaintiffs rely upon to distinguish *Merrill* merely discuss whether a case for estoppel against the government had been made out, but do not establish valid reasons for refusing to apply the holding of *Merrill* to the factual situations. *See People's Bank & Trust*, 7 Cl.Ct. at 669 (holding that further factual and legal development was essential, and expressing a concern over possible affirmative misconduct); *Federal Deposit Insurance Corporation v. Harrison*, 735 F.2d 408, 413 (11th Cir.1984) (FDIC subject to equitable estoppel when acting in corporate capacity and requisite elements of estoppel met). We have determined that estoppel has not been established, and plaintiffs' argument and supporting citations do nothing to further their claim.

The defense articulated in *Merrill* is therefore available to defendant. In *Merrill*, the Supreme Court determined that

farmers who had relied on erroneous advice given by a county committee that their reseeded wheat was insured under the Federal Crop Insurance Act were *not* protected when the crop was destroyed. The Court held that because the regulations excluding reseeded wheat from insurance coverage were published in the Federal Register, the farmers were bound by them, "regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance." *Merrill*, 332 U.S. at 385, 68 S.Ct. at 3.

The facts presented in this case are similar to those in *Merrill*—a government agent made representations that were beyond the scope of his regulatory authority and the government cannot be bound by those representations. It is not disputed in this case that the higher PIK compensation was beyond the scope of the ASCS official's regulatory authority to offer plaintiffs. The government therefore is not bound by the unauthorized and erroneous contract terms, and plaintiffs are limited to the PIK compensation that was set after the error had been corrected. However harsh and unfair this result may seem, this is the law that must be applied, absent a showing of affirmative misconduct that would estop defendant from raising the *Merrill* defense. It follows logically that no breach of contract can occur when nonbinding contractual terms are not met, and thus we find upon these facts that defendant has not breached its PIK contract with plaintiffs. Moreover, as mentioned in Part I of this opinion, a breach of contract founded on a promissory estoppel theory does not fall within our jurisdiction.

## CONCLUSION

For the reasons herein, the court finds that defendant's alternative motion for summary judgment is granted. No facts are in dispute, as we are bound by the facts that have been established at the administrative hearing, and we find that defendant is entitled to judgment as a matter of law pursuant to RUSCC 56. The clerk is direct-

ed to enter judgment for defendant and assess no costs.

IT IS SO ORDERED.