**RYDER FARMS, INC. & Alfred Ryder, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 495–89C.

United States Claims Court.

Sept. 27, 1991.

Stuart D. Weiland, Kansas City, Mo., for plaintiffs.

J. Peter Mulhern, Washington D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Michael Knipe, U.S. Dept. of Agriculture, of counsel.

MARGOLIS, Judge.

This contract case is before the court on defendant's motion for summary judgment. Plaintiff Alfred Ryder ("Ryder") signed a contract with defendant to grow crops and in return receive payments under a price support program. Defendant determined that Ryder filed an erroneous acreage report, declared plaintiffs ineligible for price support payments, and assessed liquidated damages. Ryder and Ryder Farms, Inc. ("Ryder Farms") challenge defendant's determinations as not rationally based on the administrative record and seek to recover the payments. Defendant counterclaims to collect the liquidated damages, and to recover crop insurance premiums allegedly owed by plaintiffs to defendant. Ryder counterclaims seeking payment for an alleged insured loss under defendant's insurance program. After careful review of the record, and after hearing oral argument, this court grants defendant's motion for summary judgment.

### FACTS [1]

On April 25, 1986, Ryder signed a contract (Form CCC–477) to participate in the 1986 Wheat and Feed Grain Programs in Mercer County, Missouri. The Secretary of the United States Department of Agriculture ("USDA") is directed by the Agricultural Adjustment Act of 1938, as amended, 7 U.S.C. § 1281 et seq. (1982), to carry out price support and production adjustment programs through the Commodity Credit Corporation ("CCC"). Operation of

---

1. With respect to the price support program issues, the facts are adapted from the administrative record which is the basis of review by this court. See discussion, infra, concerning the standard of review.

these programs is administered through the USDA's Agricultural Stabilization and Conservation Service ("ASCS"). *Raines v. United States*, 12 Cl.Ct. 530, 532 n. 1 (1987). Three levels of authority exist under the ASCS. *Id.* On the local and state levels, programs are administered by county and state ASCS committees. 7 C.F.R. § 713.2 (1986). On the federal level, the Deputy Administrator, State and County Operations ("DASCO") supervises the state committees. *Id.* The contract was not signed on behalf of the government until September 19, 1986.

The contract required the contracting producer to file a Farm Operating Plan for Payment Limitation Review. Only Ryder Farms filed an operating plan, even though Ryder, not Ryder Farms, signed the contract to participate in the program.[2] This created confusion among members of the Mercer County ASCS Committee as to who was farming plaintiffs' property and delayed action on plaintiffs' request for advance deficiency payments.[3] Action on advanced deficiency payments was further delayed by Ryder's request that the county committee defer issuing any advance deficiency payments until after he resolved a dispute with the Federal Crop Insurance Corporation.

The contract also required Ryder to certify the number of acres he would cultivate for each crop and the number of acres he would set aside for conservation. CCC–477 ¶ 2; 7 C.F.R. § 718(a). The contract and applicable regulations provide that a producer who violates the contract with the CCC by making misrepresentations in an acreage report is ineligible to receive payments and is subject to liquidated damages. Form CCC–477 ¶ 20; 7 C.F.R. § 713.112(a). "A producer who is determined to have erroneously represented any fact affecting a program determination with respect to this contract shall not be entitled to payments or other benefits made in accordance with the crop program for which the representation was made ... and [shall] be subject to liquidated damages." Form CCC–477 ¶ 20; 7 C.F.R. § 713.112(a).

On July 15, 1986, Ryder filed an acreage report certifying that he would cultivate 244.1 acres of grain sorghum.[4] On July 30, 1986, the farm was spot checked at the request of the Mercer County ASCS Committee. An ASCS Field Assistant, Gerald Goodin, inspected the farm. Goodin reported that no grain sorghum had been planted and that tall weeds had been disced up.

Subsequently, the county committee held a hearing at which Ryder presented evidence that he had planted grain sorghum. Specifically, Ryder contended that he had planted the sorghum, but he disced it up because his advance payments were not authorized, and he did not have money to fertilize and spray for weeds and grass. Plaintiffs also offered documentary evidence that they purchased fertilizer and milo seed.

On September 22, 1986, the county committee, relying on Goodin's report, determined that plaintiffs had never planted milo and that the July 15, 1986 certification demonstrated a lack of good faith. The plaintiffs were declared ineligible for all program benefits and were assessed liquidated damages of $4,880.39.

Ryder met with the county committee on October 6, 1986 and argued that plaintiffs informed the county ASCS committee, by letter dated July 21, 1986, that they had destroyed their milo. Such a letter was found in the county committee's files. The county committee determined that the plaintiffs gave no notice of the destruction

---

2. In our case, the plaintiffs continue to argue that Ryder Farms, not Ryder, was the contracting party. While this issue is disputed, it is not material to the disposition of this case.

3. "Deficiency payments" are payments made to producers of program crops that represent the difference between the "target price" of the crop as established by the 1949 Act and the CCC commodity loan rate. *See* 7 C.F.R. § 713.108.

A portion of the payments may be requested by the producer to be paid early in the crop year. These are called "advance deficiency payments." *Id.* § 713.104. Otherwise, payments are made at the end of the crop year.

4. Grain sorghum is also referred to in the administrative record and in this opinion as "milo." Milo, is a drought-resistant feed grain consisting of white or yellow sorghum.

of their milo prior to the time that Goodin checked the fields. The committee found that the letter dated July 21, 1986 was not placed in the file on or about that date. Rather, the committee held that Ryder placed the letter in the file on October 1, 1986. The committee reached this conclusion on the grounds that Ryder had unsupervised access to the file on October 1, 1986, that committee employees familiar with the file stated that the letter had not been there prior to September 19, 1986, and that the letter had no date-received stamp on it.

Ryder appealed to the Missouri State ASCS Committee. After a *de novo* hearing, the state committee sustained the decision of the county committee. The state committee informed Ryder of its decision by letter dated November 7, 1986. Ryder then appealed to DASCO, and argued again that he disced up the sorghum because the county executive director refused to authorize advance payments. Ryder presented copies of checks, invoices, and other documents purporting to show that Ryder purchased seed, chemicals, and other supplies for the grain sorghum crop. Ryder also submitted statements from his neighbors, who stated that they recalled seeing Ryder spread fertilizer on the fields reported as being planted with grain sorghum.

DASCO conducted a *de novo* telephone hearing on January 15, 1987. After stating the facts of the appeal, DASCO held that:

[t]he evidence that you furnished does not positively establish that you did plant grain sorghum on the fields in question. Some of it is contradictory and other representations appear flawed. You were notified of the findings of fact of the field reporter by letter dated August 1 but it was not until September that you appeared to respond to them. Thus, the only acceptable evidence in the case record is the report of an experienced field reporter that there had been no milo planted.

The plaintiffs then filed the instant lawsuit seeking review of DASCO's determinations and damages of $40,598.23 equal to the amount of the price support payments that the plaintiffs allege they are due.

In our suit, defendant counterclaimed to collect the payment of certain premiums for insurance of Ryder's 1985 wheat and corn crops. Ryder insured his 1985 wheat crop in Harrison County, Missouri with the Federal Crop Insurance Corporation ("FCIC") under FCIC policy # 29–081–56129. He owned 100 percent of the principal crop. Defendant claims that the principal owed to the government for premiums is $9,316.83 plus interest, which has accumulated at the rate of 1.5 percent per month since September 28, 1984. Ryder also insured his 1985 corn, wheat, and soybean crops in Mercer County, Missouri under FCIC policy # 29–129–56129. He owned 100 percent of those crops. Defendant alleges that the principal owed on the premiums for the Mercer County crops is $7,718.39 plus interest, which has accumulated at the rate of 1.5 percent per month since September 28, 1984.

Ryder claims that the premiums are not owed on the policies because they are offset against $22,750 representing the value of Ryder's lost 1985 soybean crop allegedly insured under FCIC policy # 29–129–56129. Ryder asserts that the FCIC insured the soybean crop. He also alleges, and the defendant agrees for purposes of this motion, that the crop was a total loss, and the FCIC paid no compensation. Ryder counterclaims for the value of the lost crop.

## DISCUSSION

The issues presented are whether the determination by the ASCS that the plaintiffs were ineligible for deficiency payments for crop year 1986 lacked a rational basis; whether plaintiffs' rights to procedural due process under the United States Constitution were denied by the actions of the ASCS; whether the assessment of liquidated damages was proper; whether Ryder owes insurance premium payments for crop year 1985 to the defendant; and whether defendant owes Ryder payments to compensate for lost crops allegedly insured by defendant.

*Review of DASCO's Determinations*

This court's function is to examine the facts as determined by ASCS and to ascertain whether a rational basis in the administrative record underlies the decision reached. *Knaub v. United States*, 22 Cl. Ct. 268, 275 (1991). Consistent with the standard of judicial review, this court must determine, based on the administrative record, whether the ASCS's final determination regarding the plaintiffs lacked a rational basis. In our case, DASCO found that Ryder submitted a crop acreage report containing erroneous representations, and denied deficiency payments to the plaintiffs in accordance with the terms of the contract and applicable regulations. *See* Form CCC–477 ¶ 20; 7 C.F.R. § 713.112(a). DASCO based its decision on the report of the ASCS Field Assistant, Gerald Goodin, who inspected the farm and concluded that no grain sorghum had been planted and that tall weeds had been disced up. After reviewing all of the evidence presented, DASCO chose not to believe Ryder's contention that he had planted the grain sorghum, but had disced it up.

On the basis of the administrative record, it was rational for DASCO to conclude that no grain sorghum had been planted, that the acreage report filed by Ryder was erroneous, and that the plaintiffs are not eligible for deficiency payments. DASCO weighed the evidence and accorded more weight to Goodin's report, a first-hand account of the state of planting at plaintiffs' farm, than to the evidence presented by Ryder, none of which directly addressed whether milo was planted, and much of which was not disinterested. While legal determinations of the ASCS are reviewable, this court is precluded from reviewing factual findings made by the agency. *Knaub*, 22 Cl.Ct. at 274; *see* 7 U.S.C. § 1385 ("The facts constituting the basis for any ... payment under the ... wheat, feed grain ... programs ... [or] any loan or price support operation ... shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government."). Accordingly, this court will not disturb the ASCS's finding of fact that no milo was cultivated on the plaintiff's farm. If no milo was planted, the acreage report was erroneous, and the plaintiffs are not entitled to deficiency payments. *See* Form CCC–477 ¶ 20; 7 C.F.R. § 713.112(a). This legal determination was rationally based on the administrative record.

*Due Process*

Plaintiffs allege that defendant violated their procedural due process rights under the United States Constitution. The Claims Court does not have jurisdiction over claims based on an alleged violation of due process rights. *See, e.g., Cabrera v. United States*, 10 Cl.Ct. 219, 221–22 (1986); *Prevado Village Partnership v. United States*, 3 Cl.Ct. 219, 228 (1983); *Montalvo v. United States*, 231 Ct.Cl. 980, 982–83 (1982). This court does not have jurisdiction over the plaintiffs' due process claim.

*Liquidated Damages*

The contract provides that "[a] producer who is determined to have erroneously represented any fact affecting a program determination with respect to this contract shall ... be subject to liquidated damages. Such liquidated damages shall be determined in accordance with paragraph 23 of this appendix." Form CCC–477 ¶ 20; 7 C.F.R. § 713.112(a); *see also* 7 C.F.R. § 713.49(d). As stated previously, it was rational for DASCO to conclude, based on the administrative record, that Ryder erroneously represented in his acreage report that he would cultivate 244.1 acres of milo. The assessment of liquidated damages was therefore justified under the contract and applicable regulations. Liquidated damages calculated using the formula set out in paragraph 23 of the contract were assessed in the amount of $4,880.75. There was no error in these calculations. Plaintiffs owe the government $4,880.75, together with interest from October 15, 1986.

*Crop Insurance* [5]

Ryder does not dispute that premiums are owed on the crop insurance poli-

---

**5.** At oral argument, the government suggested

that a recent amendment to 7 U.S.C. § 1506

cies, but rather contends that they were offset by the loss of the soybean crop insured under one of the policies. Therefore, this court will first address whether the government owes Ryder payments for the loss of the soybean crop. Additional background is necessary. A crop is not insured, even if a producer signed an insurance contract with the FCIC, unless the crop is planted before the "plant ending" date that the FCIC establishes for that crop in that year. 7 C.F.R. § 431.7 (1985). In 1985, the FCIC established a plant ending date of June 20 for soybeans in Missouri. Ryder filed a claim for a FCIC crop insurance indemnity payment to compensate him for the loss of his 1985 soybean crop. The FCIC determined that Ryder's soybean crop had been planted after the plant ending date, either in the last week of July or the first week of August, 1985, and it declined to pay Ryder any indemnity.

Ryder appealed the decision to an FCIC appeal official who conducted a hearing on his appeal on March 17, 1986. On March 25, 1986, an appeal determination denying Ryder's appeal was sent to him by certified mail, and was returned to the FCIC as unclaimed on April 17, 1986. The FCIC sent the appeal determination to Ryder on two more occasions, on April 30, 1986 and on July 29, 1986. Ryder appealed the determination on March 6, 1989. His appeal was rejected on the ground that any further consideration of his 1985 claim for a crop insurance indemnity payment was time barred. Appeals from a hearing officer's determination to the Deputy Manager of the FCIC are timely only if brought within 45 days of the determination. 7 C.F.R. § 400.100.

Ryder contends that a genuine issue of material fact in dispute is whether any of the notices were received by Ryder. However, defendant submits documentation showing that the government sent the appeal determination to Ryder on three separate occasions at the same address where he received notice of the time and place of the hearing. Ryder filed his appeal to the

Deputy Manager of the FCIC nearly three years after the 45 day appeal period started to run. This court finds that Ryder failed to exhaust his administrative remedies within the FCIC, that his time to do so has expired, and that Ryder cannot now seek judicial review of the FCIC's decision to deny his claim for a crop insurance indemnity payment. *See* 5 U.S.C. § 704; *United States v. Bisson*, 646 F.Supp. 701, 706–07 (D.S.D.1986) (holding that a producer who failed to exhaust all available administrative appeals could not sue the government to recover insurance indemnity), *aff'd*, 839 F.2d 418 (8th Cir.1988). The insurance premiums owed to the government are not offset by losses. Ryder owes the government payments of $17,035.22 plus interest, which has accumulated at the rate of 1.5 percent per month since September 28, 1984.

## CONCLUSION

DASCO's determination that the plaintiffs were ineligible to receive price support payments and could be assessed liquidated damages was rationally based on the administrative record. This court does not have jurisdiction over the plaintiffs' due process claim. Plaintiffs owe liquidated damages in the amount of $4,880.75 plus interest, from October 15, 1986. As to Ryder's claim for insured losses under the defendant's crop insurance program, Ryder failed to exhaust his administrative remedies, and the FCIC's determination is not subject to judicial review. Ryder owes crop insurance premium payments on the 1985 crops to the government in the amount of $17,035.22 plus interest, which has accumulated at the rate of 1.5 percent per month since September 28, 1984.

Accordingly, the defendant's motion for summary judgment is granted. The Clerk is directed to dismiss the plaintiffs' complaint and counterclaim. The Clerk is also directed to enter judgment in favor of the United States on its counterclaim in the amount of $4,880.75 plus interest, from October 15, 1986 and $17,035.22 plus interest,

(1990) affects this court's jurisdiction over FCIC claims. This court has reviewed the amend-

ment and finds that it does not affect this court's jurisdiction over these claims.

which has accumulated at the rate of 1.5 percent per month since September 28, 1984. Each party will bear its own costs.