Norman WILLSON, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 691–86C.

United States Claims Court.

Feb. 10, 1988.

Wesley A. Nuxoll, Colfax, Wash., for plaintiffs; Robert D. Loomis, of counsel.

Elizabeth S. Woodruff, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

NETTESHEIM, Judge.

This case is before the court after argument on cross-motions for summary judgment.

## FACTS

The following facts are undisputed. The Commodity Credit Corporation (the "CCC"), through the Agricultural Stabilization and Conservation Service (the "ASCS") of the United States Department of Agriculture, administered a price support and production program. On a local level, the program was administered by state and county ASCS committees. The program was operated in accordance with the Agricultural Act of 1970, 7 U.S.C. § 1307 (1982), and the Commodity Credit Corporation Charter Act, 15 U.S.C. § 714 (1982), as well as the applicable regulations, 7 C.F.R. §§ 713.1–713.116—795.1–795.23 (1985). The program's purpose was to obtain a reduction of acreage from production of specified crops in order to adjust the total national acreage of the crops. 7 C.F.R. § 713.49.

Plaintiff Nor–Will Farms, Inc. ("Nor–Will"), is a Washington State corporation in which Norman Willson and his wife own 30.95 percent of the stock and his son Steve Willson holds a 26.72–percent interest. Plaintiff Steve Willson leases and operates two Farms, Nos. B–203 and B–010, owned by Nor–Will. The machinery used in the operation of these farming enterprises is owned by Nor–Will and leased, under separate agreement, to Steve Willson. Plaintiffs Norman Willson and John Shoemaker own and operate as a partnership plaintiff S & W Land Company ("S & W Land"), in which each is a general partner of Farm No. 8363. Nor–Will performs custom farming, *i.e.*, provides labor and equipment, for S & W Land for which it is compensated in cash after harvest.

On January 14, 1985, Steve Willson as operator, with Nor–Will as producer, entered into, for Farm No. B–203, and with Beverly Hale (as an additional producer), for Farm No. B–010, a "Contract To Participate in the 1985 Price Support and Production Adjustment Programs" with the Washington State Agricultural Stabilization and Conservation Service's local representative, the Whitman County ASC Committee (the "county committee").

On February 22, 1985, S & W Land, as operator, with Norman Willson and plaintiff John Shoemaker as producers, entered into another "Contract To Participate in the 1985 Price Support and Production Adjustment Programs" also with the county committee. The parties identified above—except Beverly Hale—are collectively referred to as plaintiffs.

In order to qualify as participants in the program, plaintiffs were to limit the planting of their crops for harvest—wheat and barley—to no more than that specified in their contracts. The planting was designated as permitted acreage. The Acreage Conservation Reserve (the "ACR") figure was determined by taking the sum of land diverted by a producer and a percentage of the land planted for harvest. If the operator and all other producers on the farm qualified, they became entitled to deficiency and diversion payments, subject to the payment limitations set forth in 7 C.F.R. § 713.1. Eligible operators and producers were entitled to advance diversion or deficiency payments. § 713.104. The land set aside as ACR acreage was restricted to non-commercial recreation use under § 713.63(c)(2).

Plaintiffs' contracts were subject to the payment limitations specified in 7 C.F.R. §§ 795.1–795.23. Section 795.3 stipulates that a "person" may be an individual, joint stock company, corporation, association, trust, estate, or other legal entity. An individual or legal entity must qualify as separate for purposes of qualification under the payment limitations, and such individual or legal entity will be viewed so that the rule which is most restrictive will apply. § 795.6.

Plaintiffs were determined by the Washington State ASCS Committee and, ultimately, by the Deputy Administrator, State and County Operations for the ASCS (the "DASCO") to be one person for purposes of the payment limitations, since it was found that they were engaged in custom farming. "Custom farming" entails the use by an individual or legal entity of outside labor and equipment in its farming operations. 7 C.F.R. § 795.16(a). Under the regulation a "person" may use custom farming only if the service is obtained on a unit-for-work basis and the entity performing the custom farming has no interest in the subject land. Steve Willson was combined with Nor–Will, since it was found that Nor–Will was the supplier of both equipment and labor for Steve Willson's farms, as well as his landlord. Additionally, if an individual or legal entity seeking to qualify as a separate person has more than a 20–percent interest in the land being custom farmed, the entity performing the custom farming may not finance the crop. § 795.16(b). Nor–Will was determined to be financing S & W Land's crop, since it was compensated from the proceeds of the crops sold. The combination of individuals under the payment limitations had the consequences of subjecting them to a single payment of $50,000 maximum. § 713.1.

On June 12 and July 1, 1985, by letters from the county committee, plaintiffs were notified that they were to be treated as separate persons for purposes of the 1985 payment limitations. However, the Washington State ASCS Committee, in reviewing the county committee's decision, determined that plaintiffs should be treated as one person for purposes of the 1985 payment limitations. Plaintiffs were notified of this determination on October 15, 1985.

Plaintiffs appealed this determination to the Washington State ASCS Committee by letter of October 24, 1985, and a hearing was held on November 6, 1985. Plaintiffs presented testimony and additional documentary information. Thereafter, the Washington State ASCS Committee affirmed its decision that plaintiffs should be considered one person for purposes of the 1985 payment limitation.

Plaintiffs appealed this second decision to the DASCO, in Washington, D.C. An informal hearing in which plaintiffs participated by telephone was held on January 9, 1986. Plaintiffs were notified on April 4, 1986, that the DASCO had denied their appeal. This notice concluded plaintiffs' appeal rights under 7 C.F.R. §§ 780.1–780.-12.

Plaintiffs then filed an action in the United States District Court for the Eastern District of Washington seeking judicial review of the agency's determination. *Norman Willson, et al. v. United States,* No. C–86–312–RJM (E.D.Wash., filed Oct. 17, 1986). On October 30, 1986, the case was transferred to this court.

Plaintiffs argue that their combination by the DASCO was untimely and a breach of contract. Plaintiffs also maintain that they relied to their detriment on the county committee's determination that they were to be treated as separate persons for purposes of the payment limitations. Finally, plaintiffs seek to overturn the determination made by the DASCO that they were involved in custom farming and only entitled to one payment.

## DISCUSSION

The issues presented are whether the DASCO had the authority to make the redetermination of plaintiffs' status as separate persons, reversing the decision made by the county committee; whether defendant is equitably estopped from asserting that plaintiffs were not separate persons after plaintiffs relied on the county committee's decision by performing under the contracts before the adverse determination was made; and whether the determination by the DASCO that plaintiffs were engaged in custom farming under 7 C.F.R. § 795.16, thereby subjecting them to combination, was reasonable.

■ 1. Plaintiffs' case is similar to *Raines v. United States,* 12 Cl.Ct. 530 (1987). The court in *Raines* set forth an in-depth treatment of the Claims Court's jurisdiction to review determinations of the Department of Agriculture concerning

price support and crop reduction programs and the extent to which an agency decision is subject to judicial review. The court concluded that, to the extent that plaintiffs were making a claim in contract for money damages, it was cognizable under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1982). *Raines,* 12 Cl.Ct. at 534.

■ Defendant argued in *Raines,* as it does here, that judicial review is limited by 7 U.S.C. §§ 1429, 1385 (1982), to the end that the court lacks jurisdiction to review administrative determinations. The *Raines* court concluded that a review of the legal determinations made by the agency was available, but stated:

> Our role in reviewing administrative determinations under section 1429 is concededly "very limited," but not nonexist[ent]: we need not consider the wisdom of the decisions, but must scrutinize whether the officials acted rationally and within their statutory authority.

*Raines,* 12 Cl.Ct. at 536 (citations omitted). In addition, although section 1385 precludes review of the factual findings made by the agency, *see United States v. Batson,* 782 F.2d 1307, 1311–12 (5th Cir.1986), *cert. denied,* —— U.S. ——, 106 S.Ct. 3277, 91 L.Ed.2d 567 (1986), legal determinations, including whether a decision is arbitrary and capricious, are subject to review. *Gross v. United States,* 205 Ct.Cl. 605, 618, 505 F.2d 1271, 1279 (1974).

The court's function, then, is to review the facts as determined by the Secretary of Agriculture, per his authorized designee, and to ascertain whether a rational basis in the administrative record underlies the decision reached. *E.g., Raines,* 12 Cl.Ct. at 536; *Carruth v. United States,* 224 Ct.Cl. 422, 437, 627 F.2d 1068, 1076 (1980); *see also Hilo Coast Processing Co. v. United States,* 7 Cl.Ct. 175, 177 (1985). Consistent with the standards for judicial review, it must be determined based on the administrative record if there was a breach of contract or, if not, whether the ASCS's final determination of plaintiffs' status lacked a rational basis.

2. Plaintiffs' claim to a breach of contract and their basis for asserting an estop-pel against the ASCS stem from the following facts. Plaintiffs' contracts were accepted by the county committee, which determined that each plaintiff was a separate "person" for purposes of qualifying for diversion and/or deficiency payments. No question exists that the contracts were effective upon acceptance. Paragraph 11 of each contract provides: "This contract shall be effective when signed by the operator, each producer, and an authorized representative of the CCC...." Subsequently, plaintiffs performed under the contracts, but, after harvest on October 15, 1985, plaintiffs were informed that they were to be treated as one person. Plaintiffs contend that review of the county committee's decision was improper under the applicable regulations and that 7 C.F.R. § 795.13 specifically provides for review only when a decision cannot be made by the county committee.

7 C.F.R. § 795.13 states in full:

> Where the county committee is unable to determine whether certain individuals or legal entities involved in the production of a commodity are to be treated as one person or separate persons, all the facts regarding the arrangement under which the commodity is produced shall be submitted to the State committee for decision. Where the State committee is unable to determine whether such individuals or legal entities are to be treated as one person or separate persons, all the facts regarding the arrangement under which the farming operation is conducted shall be submitted to the Deputy Administrator for decision.

The provision does not, as plaintiffs contend, preclude the Washington State ASCS Committee from further considering the county committee's determination. 7 C.F.R. §§ 713.2(c), (d) subject the contracts to review and modification by the DASCO:

> (c) The State committee shall take any action required by these regulations which has not been taken by the county committee. The State committee shall also (1) correct, or require a county committee to correct, any action taken by such county committee which is not in

accordance with the regulations of this subpart, or (2) require a county committee to withhold taking any action which is not in accordance with the regulations of this subpart.

(d) No provision or delegation herein to a State or county committee shall preclude the Administrator, ASCS, or a designee, from determining any question arising under the program or from reversing or modifying any determination made by a State or county committee.

7 C.F.R. § 713 was incorporated by reference by paragraph 8 of plaintiffs' contracts:

If there is noncompliance with any of the terms and conditions of this contract or the applicable regulations found in 7 CFR Part 713, which are incorporated by reference as a part of this contract, the operator and each producer agree that:

A. Program benefits which may be available under this contract for a crop may be withheld.

Plaintiffs interpret the quoted contract provision to mean that the agency can only look to the regulations if the contractual conditions have been violated. This is an erroneous reading of the contract terms. The antecedent is the disjunctive—or—followed by the consequent—"the operators and each producer agree that. . . ." The provision seeks to correct noncompliance with either the contract terms or the applicable regulations. Properly interpreted, the contract terms subject plaintiffs to 7 C.F.R. § 713.

7 C.F.R. §§ 713.2(c), (d) thus provide for review by either a state committee or a designee of the Administrator of the ASCS —in this case, the Deputy Administrator. § 780.12. Contrary to plaintiffs' argument, it was not improper for the Washington State ASCS Committee on its own initiative to review the determination made by the county committee. Therefore, the finding that plaintiffs qualified only as one "person" and not separately was not beyond the Washington State ASCS Committee's authority as long as the decision was based upon 7 C.F.R. § 713.

■ The Washington State ASCS Committee and, ultimately, the DASCO determined that plaintiffs were engaged in custom farming under 7 C.F.R. §§ 795.16(a), (b) and therefore were not separate persons for purposes of the payment limitation. Plaintiffs contend that the contract included the terms of 7 C.F.R. § 713 as a means to determine if an applicant qualified. Once the contract was effective, plaintiffs continue, their qualifications were no longer subject to redetermination under part 795. However, 7 C.F.R. § 713.103(c) provides, in full:

Payment due producer. *Subject to the provisions of the payment limitation regulations in Part 795 of this chapter,* as amended, the total earned payment due each *eligible* producer under the program shall be determined by multiplying the total earned payment for the farm by the producer's share of such payment.

(Emphasis added.) Section 713.1(b) also provides that the amount of payments is to be in accordance with section 795. The term "payment limitations" does not refer to an amount due a producer, but refers to the categorization and qualifications of such persons. Therefore, section 713.103(c) directs that payments be made only to those producers who qualify under part 795 and only to the extent of their qualifications. The Washington State ASCS Committee's and the DASCO's determinations that plaintiffs qualified only for one payment, based on the payment limitations as to custom farming under 7 C.F.R. § 795.16, was within their authority and did not breach plaintiffs' contracts.

■ 3. Plaintiffs argue that, even if the ASCS had the authority to redetermine their eligibility, since their contracts were completed and plaintiffs detrimentally relied on the original finding by the county committee, defendant should be equitably estopped from asserting the subsequent determinations of the ASCS as a defense to making individual payments. In order to support an equitable estoppel against the Government, plaintiffs must show that the four traditional elements of an estoppel are present. *See American Elec. Laboratories, Inc. v. United States,* 774 F.2d 1110,

1113 (Fed.Cir.1985). As restated by the Claims Court in *Raines*, these showings are

> (1) the party to be estopped must know the facts; (2) it must intend that its conduct shall be acted on or must so act that the party asserting estoppel has a right to believe it is so intended; (3) the party asserting estoppel must be ignorant of the true facts, and (4) it must rely on the conduct of the former to its injury.

12 Cl.Ct. at 538 (citations omitted).[1] In cases involving reliance on representations of agency officials, the Federal Circuit has imposed the further requirement that the Government cannot be estopped from showing that an agent had no power to act contrary to applicable regulations. *See Urban Data Sys., Inc. v. United States*, 699 F.2d 1147, 1153–54 (Fed.Cir.1983).

Plaintiffs assert that the county committee had all the facts at the outset for making its decision, that plaintiffs properly relied on the county committee's determination, and that there was no basis for belief that they did not qualify. According to plaintiffs, their detrimental reliance caused injury. Plaintiffs argue that in *United States v. Lazy FC Ranch*, 481 F.2d 985 (9th Cir.1973), involving facts similar to those at bar, an equitable estoppel was upheld and that the result should control in this instance. The case is readily distinguishable. Plaintiffs in *Lazy FC Ranch* were advised affirmatively by the ASCS county agent on how the partnership could qualify for a price support program and followed the advice. Second, the contract was approved by the ASCS state committee, and, third, the regulations in effect at the time the contract was entered did not preclude the arrangement plaintiffs made in order to qualify for benefits. Finally, the appeals court placed significance on the fact that plaintiffs had attempted to terminate the contract. The court held that it would be unjust to require plaintiffs to repay the money under the circumstances,

since, but for the advice of the ASCS county agent, plaintiffs would not have entered into the contract. Moreover, allowing plaintiffs to retain the payment would not jeopardize the interests of the price support program.

In *Lazy FC Ranch*, plaintiffs changed their position on advice from an ASCS representative. Here plaintiffs could not change their positions based on the acceptance of their contracts. They planted the fall 1984 crop. Detrimental reliance could lie only on the basis of plaintiffs' withholding planting in spring 1985. The ASCS offered equitable relief for the damage caused by plaintiffs' foregoing spring planting pursuant to 7 U.S.C. § 1339a (1982), which authorizes equitable relief to a farmer who relies to his detriment on advice of an authorized representative of the Department of Agriculture in connection with a price support program. Plaintiffs were to be compensated for cropping opportunities that they could have taken advantage of after the dates of the incorrect county committee decisions in June and July of 1985. The DASCO referred the case to the county committee for final determination of monetary relief. Subsequently, it was determined on July 18, 1986, by the county committee that plaintiffs would have been unable to plant after the wrongful determination in 1985, *i.e.*, the spring planting season was over. Therefore, the damage was determined to be zero. Because the determination pertaining to cropping opportunities is one of fact and the relief granted is discretionary, this court cannot review it. *See Pope v. United States*, 9 Cl.Ct. 479, 485 (1986) (citing cases).

Plaintiffs also contend that this case is similar to *United States v. Kopf*, 379 F.2d 8 (8th Cir.1967), in which the court did not allow the ASCS to redetermine the amount of benefits to be paid to otherwise eligible producers. In *Kopf* plaintiffs initiated the redetermination process after the county

---

**1.** In addition to the traditional elements, at least one federal appeals court has held that plaintiff must show that the Government has engaged in affirmative misconduct. *See Morgan v. Heckler*,

779 F.2d 544, 545 (9th Cir.1985) (citing *Simon v. Califano*, 593 F.2d 121, 123 (9th Cir.1979) (per curiam)).

committee made a low finding concerning plaintiffs' corn crop yield. Plaintiffs' corn crop yield, and therefore payment entitlement, was increased after a hearing before the county committee. Plaintiffs relied on this figure in performing under the crop diversion program. The court concluded that since there was no showing that the hearing before the county committee did not conform with the applicable regulations, the decision should be final and the ASCS could not examine the county committee's redetermination after plaintiffs' performance had been completed and more than one year after the most recent yield had been fixed by the county committee. Thus, *Kopf* turned on the finality accorded the county committee's redetermination after a hearing and was not a case of equitable estoppel.

In the case at bar, the redetermination took place within five months of the county committee's decision, which was far less than the time interval in *Kopf.* More importantly, plaintiffs entered into contracts that by their terms subjected their eligibility to further review. The county committee made its determination that plaintiffs were qualified in June and July 1985. Sometime before October 15, 1985, the Washington State ASCS Committee concluded that 7 C.F.R. § 795.16 had been applied incorrectly by the county committee and thereafter sought to correct the determination (by referring it to the DASCO) as it was authorized to do. It is true that the Eighth Circuit in *Kopf* some 20–plus years ago did not recognize the ASCS state committee's or the DASCO's authority to reverse a county committee decision under a regulation identical to 7 C.F.R. § 713.2(d). *See* 379 F.2d at 13. This court would not be persuaded by *Kopf* for that reason alone. However, it should also be noted that the *Kopf* court reviewed in detail the county committee's redetermination as a matter of fact and found that there was no

evidence that the county committee's determination "was not in strict accord with the regulations." *Id.* As discussed below, the county committee's determination in this case was not sustainable under the controlling regulation.

■ Moreover, plaintiffs in the case at bar cannot claim to have relied to their detriment on advice supplied by a government agent. Even if they relied on the finding made by the county committee, the contract was subject to a regulation under which plaintiffs were not eligible for multiple payments. The holding in *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947), does not bind the Government to an improper determination made by a county committee which is contrary to applicable regulations. *Urban Data Sys.,* 699 F.2d at 1153–54. The risk of improper reliance in such circumstances lies with the plaintiff. *Prestex, Inc. v. United States,* 3 Cl.Ct. 373, 380 (1983).[2]

The Washington State ASCS Committee's and the DASCO's determination that plaintiffs qualified under the applicable regulation as only one person for the purposes of the payment limitation was in compliance with 7 C.F.R. §§ 713.2(c), (d). The agency review was contemplated by the terms and conditions of plaintiffs' contracts and does not support an estoppel. Nor do plaintiffs satisfy the traditional four elements for equitable estoppel.

■ 4. An agency's interpretation of an administrative regulation is entitled to deference. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). The agency interpretation " 'becomes of controlling weight unless it is plainly erroneous or inconsistent with law.' " *Udall,* 380 U.S. at 16–17, 85 S.Ct. at 801 (quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)); *see also Chevron U.S.*

---

**2.** To the extent that a fifth estoppel element has been recognized, *see supra* note 1, plaintiffs make no showing of affirmative misconduct on the part of the ASCS, such as the actions discussed in *Lazy FC Ranch.* An argument could not be drawn from this record that the ASCS

engaged in affirmative misconduct. Absent such a showing, defendant could not be estopped from applying valid regulations. *See Schweiker v. Hansen,* 450 U.S. 785, 788, 101 S.Ct. 1468, 1470, 67 L.Ed.2d 685 (1981).

*A. Inc. v. National Resources Defense Council, Inc.,* 467 U.S. 837, 844–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984) (citing cases). Plaintiffs do not level a charge that the ASCS interpretation of the regulation that performance of custom farming in specific situations results in the combination of operators and producers as one person runs afoul of the statute establishing this crop reduction program. Rather, plaintiffs challenge as erroneous and unsupported by facts the application of the regulations to Nor–Will and Steve Willson.[3] Given plaintiffs' challenge, the standard for judicial review is "whether the decision was based on a consideration of the relevant facts and whether there has been a clear error of judgment." *Citizens To Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971).

The DASCO made the final determination that plaintiff Nor–Will had engaged in custom farming for its tenant, plaintiff Steve Willson. 7 C.F.R. § 795.16(a) provides:

(a) Custom farming is the performance of services on a farm such as land preparation, seeding cultivation, applying pesticides, and harvesting for hire with remuneration on a unit of work basis, except that, for the purpose of applying the provisions of this section, the harvesting of crops and the application of agricultural chemicals by firms regularly engaged in such businesses shall not be regarded as custom farming. *A person performing custom farming shall be considered as being separate from the person for whom the custom farming is performed only if:*

(1) The compensation for the custom farming is paid at a unit of work rate customary in the area and is in no way dependent upon the amount of the crop produced, and (2) the person performing the custom farming (and any other entity in which such person has more than a 20–percent interest) has no interest, directly or indirectly, (i) in the crop on the farm by taking any risk in the production of the crop, sharing in the proceeds of the crop, granting or guaranteeing the financing of the crop, (ii) in the allotment on the farm, or (iii) in the farm as landowner, landlord, mortgage holder, trustee, lienholder, guarantor, agent, manager, tenant, sharecropper, or any other similar capacity.

(Emphasis added.)

Plaintiff Steve Willson argues that his "Equipment Lease" agreement with Nor–Will did not constitute custom farming, since there were no requirements for Steve Willson to use either Nor–Will's equipment or labor. Specifically, it is contended that the labor employees were Steve Willson's with a fixed labor cost of $10 per hour, but that his employees were paid by Nor–Will so that they would remain under Nor–Will's pension plan. The DASCO determined that, although equipment and labor were listed separately in the "Equipment Lease" agreement, the agreement had the effect of leasing the two components together.

The DASCO found that Steve Willson and Nor–Will were engaged in custom farming as contemplated by 7 C.F.R. § 795.16(a), and, since Nor–Will engaged in custom farming and had an interest as landlord in the farm operated by Steve Willson, Nor–Will and Steve Willson were combined for purposes of the payment limitations. This was a determination based upon the language in the "Equipment Lease" agreement. The construction given to Nor–Will's and Steve Willson's agreement is plausible and reasonable given the type of relationship that the regulation qualifying custom farming on a limited basis seeks to circumscribe.

In support of the determination made by the ASCS, defendant also argues that Nor–Will incurred some of the labor costs under this agreement. Defendant points to the fact that the $10 labor cost did not include a provision for fringe benefits. Instead, the contract contemplated that Nor–Will would pay for its employees' fringe benefits. Plaintiffs respond that since there

3. *See infra* note 4.

was no requirement that Steve Willson use Nor–Will's equipment nor obtain his labor from the same source, the contract was not for custom farming.

In making its determination, the ASCS is not required to examine how the farm actually was operated. It is sufficient that the ASCS based its decision on the arrangement that existed between Nor–Will and Steve Willson. Under the facts and circumstances presented to this court, the ASCS's interpretation of the applicable regulation was reasonable.[4]

### CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is granted, and plaintiffs' cross-motion is denied. The Clerk of the Court shall dismiss the complaint.

IT IS SO ORDERED.

---

4. 7 C.F.R. § 795.16(b) provides, in pertinent part:

A person having more than a 20–percent interest in any legal entity performing custom farming shall be considered as being separate from the person for whom the custom farming is performed only if:

(1) *The compensation for the custom farming service is paid at a unit of work rate customary in the area* and is in no way dependent upon the amount of the crop produced, and (2) the person having such interest in the legal entity performing the custom farming has no interest, directly or indirectly, (i) in the crop on the farm by taking any risk in the production of the crop, sharing in the proceeds of the crop, (ii) in the allotment on the farm, or (iii) in the farm as landowner, landlord, mortgage holder, trustee, lienholder, guarantor, agent, manager, tenant, sharecropper, or in any other similar capacity. (Emphasis added.)

Plaintiffs do not challenge the determination by the ASCS that Nor–Will was engaged in custom farming for S & W Land, since payments for this service were made after harvest and thus constituted crop financing. The court concludes that the ASCS's interpretation of 7 C.F.R. § 795.16(b) to combine S & W Land with Nor–Will was reasonable.