Clark S. MILLIGAN, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 91–1305C.

United States Claims Court.

Oct. 9, 1992.

Bradley J. White, Omaha, Neb., for plaintiffs.

Sean P. Murphy, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Terrence G. Jackson and Courtney Blair, Office of Gen. Counsel, U.S. Dept. of Agriculture, of counsel.

## OPINION

NETTESHEIM, Judge.

This case is before the court after argument on cross-motions for summary judgment. The issue to be decided is whether the Department of Agriculture had a rational basis for finding that plaintiffs are one "person" under the Emergency Livestock Feed Assistance Act of 1988, 7 U.S.C. § 1471 (1988) ("the Act"), thus rendering plaintiffs ineligible to receive a $50,000.00 payment limitation each, for a total of $200,000.00 in subsidies.

## FACTS

The following material facts are undisputed. The Emergency Livestock Feed Assistance Act of 1988 authorizes the Secretary of the United States Department of Agriculture ("USDA") to provide emergency feed assistance when the Secretary deems that a livestock emergency exists.[1] The Act provides that the "total amount of benefits that a person shall be entitled to receive annually under one or more of the programs established under this title may not exceed $50,000," 7 U.S.C. § 1471g, and that persons having "qualifying gross reve-

---

1. In order to preserve and maintain livestock, the Secretary shall make assistance programs available to provide for: (1) the donation of feed grain by the Commodity Credit Corporation; (2) the sale of livestock feed at an established price; (3) reimbursement of certain costs incurred during the livestock emergency; and (4) livestock transportation assistance during the livestock emergency. 7 U.S.C. § 1471d, e.

This relief is available for drought-stricken farmers, ranchers, and others in rural areas to provide low cost feed grain either through direct payments, loans, or other cost-share assistance. 7 U.S.C. §§ 1421, 1471; 7 C.F.R. §§ 1421, 1475 (1989). In order for a producer to be eligible for such payments, the producer must sign a contract to participate in the program. 7 C.R.F. § 713.49–50 (1989). One of the terms of participation in the program is that a producer's benefits are subject to reduction in accordance with the payment limitation regulations. 7 C.F.R. § 713.2(c), (d).

nues in excess of $2,500,000 annually" shall not be eligible for benefits. 7 U.S.C. § 1471h. The Agricultural Stabilization and Conservation Service (the "ASCS") of the USDA administers the Livestock Feed Program through the Commodity Credit Corporation (the "CCC").[2] Clark S. Milligan, Michael L. Milligan, Gail M. Wallace, and Sandra M. Backes ("plaintiffs"), siblings, are residents of the State of Nebraska, County of Cherry. Plaintiffs acknowledge that they "have operated for a number of years under the legal entity Milligan Farms and Ranches Limited Partnership." Plfs' Br. filed June 1, 1992, at 3. Plaintiffs' partnership agreement provides that plaintiffs' business entity is a limited partnership. Plaintiffs also admit that they chose to become a limited partnership to obtain federal tax benefits. Compl. filed July 22, 1991, ¶ 11.

On July 18, 1989, plaintiff Michael L. Milligan, in accordance with the Livestock Feed Program, executed Form CCC–640, "Livestock Feed Program—Certifications of Eligibility." In this form Mr. Milligan stated that "more than 50% of my gross annual income is received from farming, ranching, and forestry operations and that my gross annual income from these operations is not in excess of $2.5 million." Mr. Milligan also certified that "I am actively engaged in farming and that at least 10 percent of my gross annual income is derived from the production of grain or livestock." In addition, Mr. Milligan's hand-written note represented that "Milligan Farms & Ranches is a Limited Partnership...."

On January 2, 1990, plaintiffs submitted their 1990 Farm Operating Plan for Payment Limitation. Plaintiff Clark Milligan checked the box for "Limited Partnership" to designate the "Type of Entity." The other designations were "Corporation" and "Other Similar Entity." Based on the information submitted by plaintiffs, including plaintiffs' 1988 income tax records, the County Committee determined that plaintiffs were ineligible for benefits because their gross farm earnings exceeded $2.5 million for payment limitation purposes.[3] A January 5, 1990 notice advised Milligan Farms that its Application for Emergency Feed assistance under the Livestock Feed Programs had been disapproved because it had not met the requirements for the $2.5 million maximum gross income and advised plaintiffs of their 15–day period to contest the finding. Also, by letter dated January 5, 1990, the County Committee found that Milligan Farms was actively engaged in farming and ranching and listed the following as each "one person": (1) Milligan Farms and Ranches; (2) Clark S. Milligan; (3) Michael L. Milligan; (4) Gail Wallace; and (5) Sandra Backes. The letter went on to state that "[t]he person determination is for the $50,000 payment limitation."

The County Committee, by letter of January 11, 1990, attempted to clarify the Jan-

**2.** CCC is a wholly owned Federal Government corporation. *See* 15 U.S.C. § 714 (1988). Although the program benefits sought by plaintiffs in connection with the 1989 crop year are funded by CCC, the actual day-to-day operations of administering domestic CCC programs are performed generally by the ASCS.

**3.** Under the 1987 amendment to the Food Security Act, the Secretary is authorized to issue regulations defining "person," and to determine whether a given agricultural producer constitutes one or more "persons" for purposes of determining applicability of the maximum limitation. 7 U.S.C. § 1308(5)(A) (Supp. I 1989); 7 C.F.R. §§ 795, 1497. The maximum farm program benefit a "person" may receive is $50,-000.00. 7 U.S.C. § 1308(1).

The regulations define the term "person" in such a way as to combine individuals, partnerships, corporations, and other legal entities which, because of their legal or economic relationship, constitute a single economic unit. 7 C.F.R. § 795. Thus, there are a number of relationships that can cause individuals to be treated as one "person." 7 C.F.R. § 795.6. For example, a partnership cannot be treated as a "person" separate from the individual comprising that entity. 7 C.F.R. § 795.7. Likewise, a limited partnership cannot be treated as more than one "person." 7 C.F.R. § 1497.3(b).

In order to be treated as a separate "person," an individual or legal entity must demonstrate that it: (1) has a separate and distinct interest in the land or crop involved; (2) exercises separate responsibility for its interest; and (3) is responsible for payment of the cost of farming related to such interest from a fund or account separate from that of any other individual or entity. 7 C.F.R. §§ 795.3, 1497.3(b).

uary 5, 1990 letter concerning the "person" determination for Milligan Farms and Ranches:

> Our letter dated January 5, 1990 states that there are 5 separate persons for limitation purposes. This was done to show you that none of the individuals were combined with the Limited Partnership. What is not clear in the letter is that the four individuals, Clark, Michael, Gail and Sandra, would be eligible for payments only on farming or ranching interest separate and distinct from Milligan Farms and Ranches LTD.

The January 11 letter went on to state that the County Committee determined entities wherein all partners are both general and limited as the entity which results in the more restrictive rules being applied. The County Committee determined that the rules for the limited partnership are more restrictive, because those rules limit the entity's application to only one person for the $50,000.00 limitation.

By letter dated January 17, 1990, plaintiffs requested reconsideration of the County Committee's denial of their application. Plaintiffs argued that since all partners are both general and limited, all partners are liable. Thus, plaintiffs argued, the $2.5 million maximum gross income limit should apply to each partner: "This would make the gross income limit 10 million dollars instead of 2.5 million dollars...." The payment limitation thus would be $50,-000.00 per person or partner for a total of $200,000.00. Plaintiffs stated that they are a joint operation and as such meet "the requirements for the Livestock Feed Program as explained in *Nebraska Notice DF–175*, (Notice DF–214) 3. *New Policy* C:

1.(A) A joint operation such as a partnership." (Emphasis in original.)

On February 6, 1990, the County Committee met to discuss, *inter alia*, payment limitation reviews. The County Committee obtained an opinion that the original determination was correct because the entity is in fact "a bonafide limited partnership and only operating as a joint venture...." In the meeting minutes, the County Committee noted that "the extent of the limited partners' liability is their individual contributions to the entity. Therefore, the general partners would be liable for debts incurred by the entity, but not debts against the assets contributed to the entity by the individual partner when the contribution was made." The minutes also stated that the determination was tabled in order to research the matter more thoroughly and review it with the District Director.

On March 13, 1990, the County Committee again met to discuss, *inter alia*, the pending appeal for Milligan Farms and Ranches person determination. The meeting minutes stated that, at the advice of the District Director, the County Committee determined that the original person determination should stand: "Therefore [Milligan Farms] is one person for limitation purposes based on the information that is available ..." to the County Committee as of that date.

By letter dated March 14, 1990, the County Committee informed plaintiffs that it had affirmed its previous denial. The letter stated that this determination was made prior to review of the actual Partnership Agreement.[4] The Partnership Agree-

---

**4.** Plaintiffs' Amended Articles of Limited Partnership state, in relevant part:

> *Defined Terms*
> "*General Partners*" means GAIL WALLACE, CLARK S. MILLIGAN, SANDRA BACKES and MICHAEL L. MILLIGAN.
> "*Limited Partners*" means GAIL WALLACE, CLARK S. MILLIGAN, SANDRA BACKES and MICHAEL L. MILLIGAN and any assignee of a limited partnership unit if such assignment is permitted by this Agreement.
> ....
> "*Partnership*" means the limited partnership formed pursuant hereto.

> "*Substituted Limited Partnership*" means any person admitted to the Partnership as a Limited Partner pursuant to the provisions of Article VIII.
> ....
> Section 3.7. *Liability of Partners.* No Limited Partner shall be liable for the debts, liabilities, contracts or any other obligations of the Partnership other than for any personal guarantees actually executed by him, provided, however, that a person who is both a General Partner and a Limited Partner shall be liable as a General Partner.
> ....

ment had been requested verbally and in writing on February 27, 1990, but had not yet been received.

By letter of March 22, 1990, plaintiffs appealed the second denial to the Nebraska State ASC Committee. Plaintiffs argued that the County Committee erred in determining that they were a limited partnership because none of the partners had limited liability. Specifically, plaintiffs pointed to the *ASCS Handbook Payment Limitations For State and County Offices* (1991) (hereinafter "the Handbook"). It defines a "limited partner" as an entity which, "[e]ven though 1 or more limited members may be held liable, the partnership remains a limited partnership as long as 1 member's liability is limited." Handbook, part 3, ¶ 107 B2c.[5] Plaintiffs contended that, since each member is both a general and a limited partner pursuant to the Partnership Agreement, no member's liability is limited and each member must be liable as a general partner. In their appeal plaintiffs concluded that since there are no limited partners, they are a joint operation, and as such must be considered separate persons who meet the maximum gross income requirement. Satisfaction of this requirement en-

titles each "person" to a $50,000.00 payment limitation.[6]

By letter dated May 25, 1990 the State ASC Committee affirmed the County Committee's denial of plaintiffs' March 22, 1990 appeal. In this letter, the State Committee noted that "since none of the partners in Milligan Farm and Ranches, LTD, have a sep[a]rate and distinct livestock operation, they would not be considered as a sep[a]rate 'person' and the least number of 'persons' would be by considering Milligan Farm and Ranches, LTD., as a limited partnership...." The State Committee noted that this would result in a one-"person" determination compared to a four-"person" determination if plaintiffs were considered a general partnership. The State Committee concluded that plaintiffs are a limited partnership and, as such, have a one-"person" payment limitation: "For Calendar year 1988, Milligan Farm and Ranches, LTD., grossed in excess of $2.5 million, which makes this entity ineligible for the 1988 Livestock Feed Program."

By letter dated May 31, 1990, plaintiffs appealed the State Committee decision to the Deputy Administrator, State and Coun-

---

Section 10.4. *Applicable Law.* This agreement shall be construed and enforced in accordance with the laws of the State of Nebraska.

**5.** Part 3, *Section 2 Common Entity Determinations* of the Handbook at ¶ 107A states:
For payment limitation purposes, a limited partnership must consist of at least 2 individuals or entities, including a general partner and one or more limited partners.
Paragraph 107B states:
If all partners are both general and limited, consider the entity a limited partnership or a general partnership, whichever results in applying the more restrictive rule.
Paragraph 107B1a states that a general partner:
a. Is entrusted with the management and control of the limited partnership's business.
b. May become personally liable for all debts of the limited partnership on the same basis as a partner in a general partnership.
Paragraph 107B2a defines a limited partner as one who:
a. May become personally liable for any debts of the limited partnership only for the amount invested or contributed to the assets of the limited partnership, except as provided in Subparagraph b.

b. May take part in managing or controlling the limited partnership's business, but the limited partner risks being held liable as a general partner.
c. Even though 1 or more limited members may be held liable, the partnership remains a limited partnership as long as 1 member's liability is limited.

**6.** In their March 22, 1990 appeal letter, plaintiffs presented a second argument. Plaintiffs contended that they are a general partnership because, per the Handbook, where two or more rules appear to be applicable, the rule that is most restrictive on the number of persons shall apply. Plaintiffs base this argument on the ASC determination that the partnership consisted of five persons: "[i]f Milligan Farms and Ranches is treated as a limited partnership, there are *five* persons as determined in the Cherry County Committee's January 5, 1990 letter. If, however, Milligan Farms and Ranches is a general partnership, then there are only *four* persons...." (Emphasis in original.) Thus, plaintiffs concluded that they must be a general partnership because that results "in a determination of the lowest number of 'persons.'" Plaintiffs did not press this argument in their subsequent appeal, nor before the Claims Court.

ty Operation ("DASCO"). Plaintiffs set out their primary argument that "[s]ince each of the four individuals is both a general partner and a limited partner, under the terms of the Partnership Agreement, each of them is liable as a general partner...." Because there is no member with limited liability, there are no limited partners. Therefore, plaintiffs reasoned, they comprise a joint operation, and, hence, they are "separate persons" each entitled to a $50,000.00 payment limitation.

On November 20, 1991, a hearing was held on plaintiffs' appeal. Plaintiffs restated their position that the membership consists entirely of general partners because, pursuant to the Partnership Agreement, none of the members has limited liability. At the hearing plaintiffs conceded that their partnership was formed in accordance with Nebraska law as a "limited partnership." Plaintiffs also conceded that the entity was formed as a limited partnership to garner favorable tax treatment. Plaintiff's counsel explained: "All of them looked at [the tax liability] and they said, well, gosh darn, when I die I don't want my children to be saddled with the same kind of thing...." Transcript of Hearing, In the Appeal of Milligan Farms & Ranches, Ltd., Livestock Feed, Nov. 20, 1990, at 36 (ASCS App. Staff).

By letter dated April 1, 1991, DASCO affirmed the decision of the State ASC Committee. This determination, based on a review of the entire case file, including the hearing testimony, concluded plaintiffs' administrative appeal rights. The letter stated:

Based on our review of the entire case file, including the information furnished during the personal hearing, we have denied your appeal. Our review con-

firmed that Milligan Farms and Ranches, Ltd., exists under the terms and conditions of a "Limited Partnership Agreement." The partnership agreement provides that all four existing members of the entity are both limited and general partners. We recognize that from a strictly legal standpoint, a limited partnership must be one that has at least one member who is relieved from liability beyond the amount of the capital contributed to the partnership. However, in order to properly administer the payment limitations provisions, it has been the ASCS's policy to consider the entity as a limited partnership when all parties are both general and limited, if that determination is more restrictive....

The letter stated that this "long-standing policy" had proven to be "fair and equitable" in administration of the payment limitation provisions. DASCO noted that this policy found expression in the Handbook, and was in accord with their published definition of limited partnerships for payment limitation purposes.

Plaintiffs filed suit in the Claims Court seeking review of DASCO's determination that they collectively qualified as one "person."

## DISCUSSION

Judicial review of administrative determinations made by the Secretary of Agriculture is " 'very limited,' but not non-exis[tent]: ...." *Willson v. United States,* 14 Cl.Ct. 300, 304 (1988) (quoting *Raines v. United States,* 12 Cl.Ct. 530, 536 (1987)). This limitation upon the court's review is statutorily based.[7] The court "need not consider the wisdom of the decisions, but must scrutinize whether the officials acted rationally and within their statu-

---

7. 7 U.S.C. § 1429 (1988), provides:
   Determinations made by the Secretary under this Act shall be final and conclusive: *Provided,* That the scope and nature of such determinations shall not be inconsistent with the provisions of the Commodity Credit Corporation Charter Act. (Emphasis in original.)
   Further, 7 U.S.C. § 1385 states, in pertinent part:
   The facts constituting the basis for any ... payment under the ... feed grain ... pro-

   grams authorized by [the Agricultural Act of 1949 and Agricultural Adjustment Act of 1938], any loan or price support operation, or the amount thereof, when officially determined in conformity with the applicable regulations prescribed by the Secretary or by the Commodity Credit Corporation, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government....

tory authority." *Willson,* 14 Cl.Ct. at 304 (quoting *Raines* at 536). "Where administrative control has been authorized by Congress, the judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." *Port Authority of Saint Paul v. United States,* 193 Ct.Cl. 108, 120, 432 F.2d 455, 461 (1970) (citing *Mississippi Valley Barge Line Co. v. United States,* 292 U.S. 282, 286–87, 54 S.Ct. 692, 694, 78 L.Ed. 1260 (1934)). "The court's function, then, is to review the facts as determined by the Secretary of Agriculture per his authorized designee, and to ascertain whether a rational basis in the administrative record underlies the decision reached...." *Willson,* 14 Cl.Ct. at 304.

Judicial review of administrative decisions is highly deferential. *Pender Peanut Corp. v. United States,* 20 Cl.Ct. 447, 452 (1990) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)). Indeed, deference to the agency's interpretation is particularly appropriate when the administrative practice at issue involves a contemporaneous construction of a statute or regulation by the persons charged with the responsibility of implementing that statute or regulation. *Power Reactor v. Electricians,* 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961).

7 U.S.C. § 1308(5)(B)(i)(II) (Supp. I 1989), the 1987 amendment to the Food Security Act, defines "person" *inter alia,* as a limited partnership. The applicable regulation, 7 C.F.R. § 1497.3(b)(1) (1989), defines the term "person," as:

(i) An individual, including any individual participating in a farming operation as a partner in a general partnership, a participant in a joint venture, or a participant in a similar entity;

(ii) A corporation, joint stock company, association, *limited partnership,* irrevocable trust, revocable trust together with the grantor of the trust, estate, or charitable organization, including any such entity or organization participating in the farming operation as a partner in a general partnership, a participant in a joint venture, a grantor of a revocable trust, or *as a participant in a similar entity;* and

(iii) A State, political subdivision, or agency thereof.

(2) In order for an individual or entity other than an individual or entity who is a member of a joint operation to be considered a separate person for purposes of this part, in addition to other provisions of this part, the individual or entity must:

(i) Have a separate and distinct interest in the land or the crop involved;

(ii) Exercise separate responsibility for such interest; and

(iii) Maintain funds or accounts separate from that of any other individual or entity for such interest.

(3) With respect to an individual or entity who is a member of a joint operation, such individual or entity will have met the requirements of paragraph (2) of this definition if the joint operation meets the requirements of such paragraph....[8]

(Emphasis added.)

In the instant matter, DASCO determined that although none of the current partners appears to have limited liabilities, the partnership agreement nonetheless provides for future conveyances of interest in the partnership to allow for limited partners. DASCO also determined that the limited partnership was intentionally created to provide an estate planning vehicle for plaintiffs. The issue before this court is whether these findings constitute a rational basis for concluding that plaintiffs are a limited partnership for purposes of a "person determination" under the Act.

---

**8.** Unlike *Stegall v. United States,* 19 Cl.Ct. 765, 771 (1990), involving a similar regulation, this court does not resolve the issue whether plaintiffs meet the three-part test of 7 C.F.R. § 1497.3(b)(2). Defendant is correct that the ASCS would make that determination on remand if the court were to overturn the agency decision that Milligan Farms constituted a joint venture and, hence, one person for payment limitation purposes.

Plaintiffs argue that DASCO chose form over substance in determining plaintiffs to be a limited partnership for purposes of the Act. Plaintiffs acknowledge that they have operated for a number of years under the legal entity "Milligan Farms and Ranches Limited Partnership." Although plaintiffs agree that a limited partnership is to be deemed "one person" for purposes of limiting payments pursuant to the Act, they argue that the State ASC Committee erred in determining that they were a limited partnership because none of the partners has limited liability. Plaintiffs note that, despite the title of the partnership, it does not constitute a limited partnership under state law unless it has one or more general partners and one or more limited partners. Neb.Rev.Stat. § 67–233(7) (Reissue 1990). Therefore, plaintiffs proceed, they should be deemed either a general partnership or a participant in a "similar entity." 7 U.S.C. § 1308(5)(B); 7 C.F.R. § 1497.3(b).

Defendant concedes that a limited partnership is technically defined as one that has at least one member who is relieved from liability beyond the amount of the capital contributed to the partnership. It has been the ASCS's policy to consider the entity as a limited partnership where all partners are both limited and general, if that determination is more restrictive. This policy is reflected in 7 C.F.R. § 1497.-1(f), which provides: "In cases in which more than one provision of this part are applicable, the provision which is most restrictive shall apply." Since the Handbook does no more than replicate this regulation, the court need not decide whether DASCO improperly relied on the Handbook. Congress authorized the Secretary to issue a regulation defining the term "person." 7 U.S.C. § 1308(5)(A). The 1987 Amendment to the 1985 Food Security Act specifies that "person" means, *intera alia*, a limited partnership. 7 U.S.C. § 1308(5)(B)(i)(II). The amendment also provides:

(E) The Secretary may not approve (for purposes of the application of the limitations under this section) any change in a farming operation that otherwise will increase the number of persons to which the limitations under this section are applied unless the Secretary determines that the change is bona fide and substantive. In the implementation of the preceding sentence, the addition of a family member to a farming operation under the criteria set out in section 1308–1(b)(1)(B) of this title shall be considered a bona fide and substantive change in the farming operation.

Therefore, the regulation facially carried forward Congress' express designation of a limited partnership as one person for payment limitation purposes.

Defendant notes that Congress sought to eliminate abuses by corporate producers, who sought and previously received hundreds of thousands of dollars per year in payments under agricultural programs. H.R.Rep. No. 99–271, 99th Cong., 1st Sess., pt. 1, 55–56 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News 1103, 1159–60. To achieve this goal, Congress delegated to the Secretary the authority to issue regulations defining "person" and to determine whether a given agricultural producer constitutes one or more "persons" for the purpose of determining the applicable maximum limitation. *See* 7 U.S.C. § 1308(5)(A); 7 C.F.R. §§ 795; 1497.1(f). Thus, according to defendant, if an entity holds itself out as both a limited and a general partnership, to avoid potential abuses, the entity will be considered that which is more restrictive.

Plaintiffs have held themselves out as a limited partnership; they organized themselves under the laws of Nebraska as a limited partnership; they formed themselves as a limited partnership to garner tax benefits. Plaintiffs, their lack of partners with limited liability notwithstanding, have the capacity at any time to provide for limited partners within the structure of their agreement. In light of the foregoing, DASCO determined that plaintiffs are at least as much a limited partnership as general one. This determination was rational and not arbitrary. Moreover, it reflects the important policy of assuring that the USDA has certainty in dealing with business entities. To the extent that the deter-

mination is considered a matter of law, which the Claims Court can review *de novo*, the court accords the agency the deference to which it is entitled and holds that the ASCS' conclusion that Milligan Farms is a limited partnership is consistent with the statute and regulations governing payment limitations.

Plaintiffs cannot achieve the flexibility that they wish for federal or state law purposes and, at the same time, avoid the USDA's person limitation as a limited partnership. For purposes of the Act, plaintiffs were a limited partnership, and, as such, constituted "one person." Because plaintiffs were one person, and because plaintiffs grossed in excess of $2.5 million for calendar year 1988, they are ineligible for 1988 Livestock Feed Program benefits.

## CONCLUSION

For the foregoing reasons, defendant's cross-motion for summary judgment is granted, and plaintiff's motion for summary judgment is denied. The Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.