**Ken STEGALL, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 304–88 C.

United States Claims Court.

March 13, 1990.

Timothy M. Kelleher, Chico, Cal., for plaintiffs.

Carolyn Galbreath, Washington, D.C., with whom was Stuart M. Gerson, Asst. Atty. Gen., for defendant.

## OPINION

RADER, Judge.

This action arises from a dispute under the Agricultural Adjustment Acts of 1938 and 1949. 7 U.S.C. §§ 1281–1469 (1988). Plaintiffs are partners in two general part-

nerships that conduct farming operations in Colusa County, California. The partnerships finance their operations through a joint loan obtained from a local bank.

The county, state, and federal Agricultural Stabilization and Conservation Service (ASCS) offices limited plaintiffs' farm subsidy to $50,000.00—the maximum payment for a single farmer. Plaintiffs believed that the $50,000.00 payment limitation would apply to each partner separately, not to the partnerships as a whole. Plaintiffs contend that each of the nine partners individually should receive a $50,-000.00 payment for a total of $450,000.00 in subsidies. ASCS, however, treated the partnerships as one person because of the joint loan.

Plaintiffs instituted action in the United States Claims Court on May 20, 1988, seeking review of the final decision of the Deputy Administrator of the ASCS. Plaintiffs and defendant now move for summary judgment. After oral argument, this court denies both motions. The court remands this action to the Deputy Administrator to make further factual findings.

### Background [1]

Plaintiffs Ken Stegall, Ralph Stegall, Alfred Stegall, and Earl Stegall are equal partners in Stegall Brothers. Stegall Brothers is a general partnership organized in 1961 under California law. Stegall Brothers farms crops such as rice, wheat, and corn in Colusa County, California.

Plaintiffs Preston Reynolds, Anthony Stegall, Walter Seaver, and Jarrett Dunlap are general partners in the Southdown Partnership (Southdown). Plaintiffs organized Southdown in 1986 under California law. Like Stegall Brothers, Southdown engages in farming in Colusa County.

Stegall Brothers and Southdown conduct their farming operations on ASCS Farm No. 1786. Prior to 1986, members of the Andreotti family owned this 8,000 acre farm. Since 1975, Stegall Brothers has leased approximately 3,000 acres of the farm from the Andreottis. In the fall of 1985 the Andreotti's, due to financial problems, deeded the property to Bank of America.

After the Andreottis lost the land, Stegall Brothers leased the whole farm from the bank. The lease with Bank of America permitted Stegall Brothers to sublease. Consequently, in 1986, Stegall Brothers executed five subleasing agreements, including one with Southdown.

On April 24, 1986, Stegall Brothers entered into a contract with the Commodity Credit Corporation (CCC) to participate in the 1986 farm subsidy program. Southdown also signed this contract. Stegall enrolled 70 acres of farmland in the CCC subsidies program. Stegall Brothers anticipated receiving deficiency payments.

Under the CCC contract, Stegall Brothers promised to obtain outside financing to support its operations. Accordingly, on May 9, 1986, Stegall Brothers presented financing documents to Mr. David Schaad, Colusa County ASCS Director. Stegall Brothers proposed to obtain a joint promissory note with Southdown. According to plaintiffs, Mr. Schaad represented that the proposed financing would not limit the partnerships to a single $50,000.00 payment limitation under the Agricultural Adjustment Act of 1949. 7 U.S.C. § 1308 (1988).

Plaintiffs submitted their financing documents to the Colusa County ASCS Committee. Plaintiffs asked for a determination on how many partners would constitute separate persons under this arrangement. For each separate person, plaintiffs could receive up to $50,000.00.

The County Committee reviewed plaintiffs' financing documents. On June 2, 1986, the Committee decided to consider the two partnerships as one person for the purpose of computing 1986 subsidy limitations. Plaintiffs therefore could receive no

---

1. The court has no authority to make independent findings of fact; Congress vested the Secretary of Agriculture (Secretary) with final and conclusive authority to establish facts. 7 U.S.C. § 1385 (1988). Neither the Secretary nor his representatives, however, made sufficient findings.

more than $50,000.00. The County Committee did not consider the partnerships as separate persons under 7 C.F.R. § 795.3 (1986). The Committee determined that the two entities funded their farm operations from the same financial source. The Committee denied plaintiffs' request for reconsideration.

Plaintiff thereafter appealed to the State ASCS Committee. On August 12, 1986, the State Committee affirmed the County's findings. The State Committee recommended—based on past practice—that each partner in Stegall Brothers receive a separate $50,000.00 payment.

Plaintiffs appealed to the Deputy Administrator of the ASCS in Washington, D.C. On September 3, 1986, the Deputy Administrator determined that Stegall Brothers and Southdown were a single entity. The Deputy Administrator based his decision on the joint loan.

During administrative review of the payment limitation issue, plaintiffs also instituted review under 7 C.F.R. § 790.2(b) (1986) for equitable relief. Plaintiffs relied on misinformation from Mr. Schaad, who said that the joint loan would not pose payment limitation problems. The County Committee denied relief under 7 C.F.R. § 790.2 on June 11, 1987. Plaintiffs appealed on June 15, but the State Committee affirmed the County on August 17, 1987. The Deputy Administrator also denied relief on October 30, 1987 after a hearing.

Plaintiffs subsequently sought reconsideration of their claims under 7 C.F.R. § 791 (1986). Section 791 permits a party to obtain benefits that it otherwise could not receive. The County Committee, State Committee, and Deputy Administrator denied this request for reconsideration.

Plaintiffs have asserted before this court the same claims filed at the administrative level. These claims raise several issues. First, did the Deputy Administrator improperly conclude that plaintiffs constituted a single person under 7 U.S.C. § 1308 (1988) and accompanying regulations? Sec-

ond, did the Deputy Administrator improperly deny plaintiffs' request for relief under 7 C.F.R. § 790, which permits equitable relief for agency misaction or misinformation? Third, did the Deputy Administrator abuse his discretion in refusing to grant relief under the general equitable powers established by 7 C.F.R. § 791? Both parties now move for summary judgment.

## DISCUSSION

### Summary Judgment

When no material facts are in dispute, RUSCC 56 authorizes this court to resolve issues as a matter of law. *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144 (Fed.Cir.1983). The Supreme Court has underscored the importance of summary judgment procedures:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (citation omitted).

The fact that both parties have moved for summary judgment does not mean that this court must find for one side or the other. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir. 1988). Rather, this court must evaluate each of the motions on its own merits. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387 (Fed.Cir.1987).

### Regulation of Agricultural Subsidies

The Agricultural Adjustment Acts of 1938 and 1949 set forth major price support and production adjustment programs. 7 U.S.C. §§ 1281–1469 (1988). The wheat, feed grain, and rice subsidies at issue in this case fall within these comprehensive regulatory schemes. 7 U.S.C. §§ 1441–1, 1445b–3 (1988).[2]

**2.** Congress created the CCC to implement the farm subsidy programs of the Agricultural Ad-

justment Acts. 15 U.S.C. § 714c (1988). The Secretary of Agriculture may recruit state and

The Agricultural Adjustment Act of 1949 (the 1949 Act), as amended by the Food Security Act of 1985, imposes a $50,000.00 cap on farm subsidies that a "person" may receive. 7 U.S.C. § 1308(1). Congress enacted this per-person limitation in 1970. The limitation responded to public criticism that large farming operations created legal entities and entered into sham transactions to obtain a windfall from farm subsidies. *See* H.R.Rep. No. 271, 99th Cong., 2d Sess., 54–55 (1985), U.S. Code Cong. & Admin. News 1985, pp. 1103, 1158–1159; *see also, Women Involved in Farm Economics v. United States Dept. of Agric.,* 876 F.2d 994, 995 (D.C.Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 717, 107 L.Ed.2d 737 (1990).

Congress did not identify the entities that would constitute a person under this payment limitation provision. Congress directed the Secretary of Agriculture (Secretary) to issue regulations dealing with the subject:

(5)(A) The Secretary shall issue regulations—

(i) defining the term "person"; and

(ii) prescribing such rules as the Secretary determines necessary to assure a fair and reasonable application of the limitation established under this section.

Such regulations shall provide that the term "person" does not include any cooperative association of producers that markets commodities for producers with respect to the commodities so marketed for producers.

7 U.S.C. § 1308(5)(A).

Title Seven, Part 795 of the Code of Federal Regulations sets forth the Department of Agriculture's regulations defining the term "person." 7 C.F.R. § 795. The regulations set forth a general definition and then enumerate situations where multiple individuals or legal entities shall constitute a single person. 7 C.F.R. §§ 795.3, 795.6–.16. The regulations also seek to identify sham transactions created merely to obtain more than $50,000.00 in subsidies. 7 C.F.R. §§ 795.14–.17.

*Scope and Standard of Review*

■ The Administrative Procedure Act (the APA) provides the framework for determining when a court may review an agency's determination. 5 U.S.C. §§ 701–06 (1988). The APA is not a jurisdictional statute. *McGrath v. United States,* 207 Ct.Cl. 978, 978, 521 F.2d 1406 (1975). Rather, courts look to the APA to determine whether Congress intended to preclude judicial review of the agency action at issue. Within the meaning of the APA, the Department of Agriculture and the ASCS are agencies. 5 U.S.C. § 701(b)(1); *see also,* 1 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 1.2 (2d ed.1978).

■ The APA's "Right of Review" section presumes that courts may review agency decisions:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

5 U.S.C. § 702; *see also, Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967).

The APA places two limitations on the presumption of reviewability. First, the presumption does not apply when "statutes preclude review." 5 U.S.C. § 701(a)(1). A party successfully can invoke this limita-

county ASCS committees to assist the CCC in administering federal farm subsidy programs. 15 U.S.C. § 714i (1982). In practice, the CCC handles funding of the subsidy programs, while state and county ASCS committees are responsible for day-to-day administration.

County ASCS committees consist of three locally elected producers. These committees oversee implementation of the subsidy programs at the local level. The committees also make determinations regarding particular producers' eligibility for subsidies.

State ASCS committees oversee statewide operation of subsidy programs and review appeals of county committee determinations. State executive directors oversee operations at the state level, serve as advisors to the state committees, and recommend program changes to the Deputy Administrator of the ASCS in Washington, D.C.

The Deputy Administrator promulgates regulations to supervise nationwide implementation of the farm subsidy programs. The Deputy Administrator also serves as the final arbiter in the administrative appeal process.

**770**

tion by clearly and convincingly showing that Congress intended to preclude review in a particular statute. *Abbott,* 387 U.S. at 140–41, 87 S.Ct. at 1511–12. Second, the presumption of reviewability does not operate when "agency action is committed to agency discretion." 5 U.S.C. § 701(a)(2). This limitation applies, for example, where Congress drafted a statute so broad "that in a given case there is no law to apply." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971) (quoting S.Rep. No. 752, 79th Cong. 1st Sess. 26 (1945)).

■ Congress expressly precluded judicial review of the factual findings made by the ASCS to deny federal farm subsidies. The 1949 Act states:

§ *1385. Finality of payments and loans; substitution of beneficiaries*

The facts constituting the basis for any chapter 3B of Title 16 payment, any payment under the wheat, feed grain, upland cotton, extra long staple cotton, and rice programs authorized by chapter 35A of this title and this chapter, any loan, or price support operation, or the amount thereof, when officially determined in conformity with the applicable regulations prescribed by the Secretary or by the Commodity Credit Corporation, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government.

7 U.S.C. § 1385. Section 1385, however, does not preclude courts from reviewing legal conclusions or the application of factual findings to law. The statutory language only limits this court's review of facts, not the resolution of legal questions or mixed questions of fact and law. The Court of Claims explained:

[T]he factual determinations made by the agency ... are entitled to finality under 7 U.S.C. § 1385 and are not subject to review by this court; and the decisions of the agency based on such factual determinations are also entitled to finality and are not subject to judicial review, except as to questions of law, or ... proof by the plaintiff that such decisions were arbitrary or capricious.

*Gross v. United States,* 205 Ct.Cl. 605, 618, 505 F.2d 1271, 1278 (1974). Consequently,

this court may undertake *de novo* review of legal questions. However, the court must affirm the factual conclusions of the ASCS unless arbitrary, capricious, or unsupported by substantial evidence. *Doyle v. United States,* 220 Ct.Cl. 285, 311, 599 F.2d 984, 1000 (1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980); *see also, Iconco v. United States,* 6 Cl.Ct. 149, 151 (1984), *aff'd* 770 F.2d 179 (1985).

*Payment Limitations and the Definition of "Person": 7 C.F.R. Part 795*

■ As previously discussed, Congress limited each person to subsidies of no more than $50,000.00 under these farm programs. 7 U.S.C. § 1308(1). The Secretary of Agriculture defined what constitutes a person under this limitation. 7 U.S.C. § 1308(5)(A).

The Department of Agriculture's regulations give a general definition of person. Section 795.3 states:

§ *795.3 Definition of the term "person"*

Subject to the provisions of this part, the term "person shall mean an individual, joint stock company, corporation, association, trust, estate, or other legal entity. In order to be considered a separate person for the purpose of the payment limitation, in addition to the other conditions of this part, the individual or other legal entity must:

(a) Have a separate and distinct interest in the land or the crop involved,

(b) Exercise separate responsibility for such interest, and

(c) Be responsible for the cost of farming related to such interest from a fund or account separate from that of any other individual or entity.

7 C.F.R. § 795.3.

The regulations carve out several exceptions to this general definition. In pertinent part, a partnership is not a single person. Rather, each partner who actively engages in farming operations constitutes a separate person and therefore may receive up to $50,000.00 in subsidies. Section 795.7 explains:

771

**§ 795.7 Entities or joint operations not considered as a person**

A partnership, joint venture, tenants-in-common, or joint tenants shall not be considered as a person but, notwithstanding the provisions of § 795.3, each individual or other legal entity who shares in the proceeds derived from farming by such joint operations shall be considered a separate person, except as otherwise provided in this part, and shall be listed as a producer for payment purposes on program documents.

7 C.F.R. § 795.7.

The regulations establish criteria for determining whether a partner actively engages in farming and therefore constitutes a separate person. Specifically, the partner's contribution to the farming operations must match his share in the proceeds. Partners "must furnish satisfactory evidence that their contributions of land, labor, management, equipment, or capital to the joint operation are commensurate with their claimed shares of the proceeds." 7 C.F.R. § 795.7.

The Department of Agriculture recognized the dangers of sham transactions or fictional legal entities. Therefore, the regulations carefully limited the types of capital contributions that may serve as evidence of a partner's active participation in farming operations. Specifically, the partner may not raise his capital contribution with the financial assistance of the partnership:

If the contribution consists substantially of capital, such capital must have been contributed directly to the joint operation by the individual or other legal entity and not acquired as a result of (a) a loan made to the joint operation, (b) a loan which was made to such individual or other legal entity by the joint operation or any of its members or related entities, or (c) a loan made to such individual or other legal entity which was guaranteed by the joint operation or any of its members or related entities.

7 C.F.R. § 795.7.

Stegall Brothers and Southdown Partnership are general partnerships organized under California law. The regulations clearly direct the ASCS to look to each partner rather than the partnerships themselves when determining the impact of the $50,000.00 per-person payment limitation. The Deputy Administrator of the ASCS, however, looked to the joint loan received by the two partnerships without reference to the activities of each partner. Thus, the ASCS determination that the partnerships are one person is wrong as a matter of law.

■ Defendant contends, however, that the general definition of person under 7 C.F.R. § 795.3 should apply, rather than the specific partnership language in 7 C.F.R. § 795.7. According to defendant, § 795.7 does not specifically address the situation posed by this case—a joint loan obtained by a sublessor partnership and a sublessee partnership.

The regulations contemplate evaluation of partnerships according to the specific language of § 795.7. Indeed the heading of that section covers "Entities or Joint Operations." Moreover, the first sentence of § 795.7 clarifies that partnerships must satisfy the requirements of that section "notwithstanding the provisions of § 795.3." This "notwithstanding" clause is a further signal that partnerships are subject to § 795.7 as opposed to § 795.3. Applying the provisions of § 795.7, this court determines as a matter of law that the joint loan alone is not a rational basis for treating Stegall Brothers and Southdown as a single person.

The Department of Agriculture's regulations prevent individuals from receiving more than one subsidy for the same contribution of labor or capital. For example, the regulations do not treat a corporation and a shareholder as separate persons where the shareholder owns more than 50 percent of the stock. 7 C.F.R. § 795.8(a) (1986). The shareholder also is not a separate person if he does not engage "in the production of the crop as a separate producer and otherwise meet[s] the requirements of § 795.3...." 7 C.F.R. 795.8(a). Similarly, minor children and their parents

are not separate persons unless, among other things, the parents take no part in farm operations and own no interest in production. 7 C.F.R. § 795.12(a) (1986).

Section 795.7, however, allows a legitimate partnership to receive more than $50,000.00 in subsidies. The most distinctive aspect of a legitimate partnership is that each partner contributes a share of funds, services, or property. J. CRANE & A. BROMBERG, THE LAW OF PARTNERSHIP 31, 141 (1968) (*Law of Partnership*). Partners also share profits, losses, and management responsibility. Each partner assumes full personal liability for debts and tortious acts. *Law of Partnership*, at 141, 361. These and other characteristics of partnerships did not disappear merely because Southdown and Stegall Brothers executed a joint loan. Consequently, the ASCS should have reviewed each partner under the criteria established by § 795.7.[3]

ASCS further contends that even if § 795.7 applies, this court should grant its motion for summary judgment. According to defendant, the partners' contributions consisted substantially of capital. Defendant argues that these contributions do not confer separate person status on each partner. The capital contributions from each partner purportedly came from the joint loan to Stegall Brothers and Southdown. Consequently, defendant asserts that plaintiffs cannot demonstrate that their capital contributions came from separate sources as required by the § 795.7 partnership exemption.

This court cannot address defendant's contention on the current record. ASCS made no finding that the partners' contributions consisted substantially of capital.[4] ASCS also did not find facts regarding what each partner contributes to the part-

nership and whether such contributions match the partners' shares in the proceeds. Because ASCS did not evaluate the interests of each partner, it could not have determined whether each of the partners' contributions consisted substantially of capital. Without such a determination, the joint loan cannot serve as the basis for excluding any of the partners from § 795.7.

In sum, the Deputy Administrator erred as a matter of law by identifying the partnerships as a single person for purposes of computing the payment limitation. Absent factual findings on the nature of each partners' interests and contributions, this court cannot decide whether plaintiffs may receive more than $50,000.00 in subsidies. Consequently, the court must remand this action to the Deputy Administrator of the ASCS for further proceedings.

### Resolution of Plaintiffs' Claims under 7 C.F.R. §§ 790 and 791

During the pendency of their payment limitation claim at the administrative level, plaintiffs initiated another claim under 7 C.F.R. § 790.2. Section 790.2 states:

Notwithstanding any other provision of law, performance rendered in good faith in reliance upon action or advice of any authorized representative of a county committee or State committee as defined in Part 719 of this chapter, may be accepted by the Administrator ... as meeting the requirements of the applicable program, and price support may be extended or payment may be made therefore in accordance with such action or advice to the extent it is deemed desirable in order to provide fair and equitable treatment.

7 C.F.R. § 790.2(a).

Plaintiffs contend that they detrimentally relied on the representations of Mr.

---

3. This court also rejects defendant's contention that 7 C.F.R. § 795.6 requires the court to choose § 795.3 over § 795.7. Section 795.6 demands application of the more restrictive of two regulatory provisions defining person. By its terms, however, § 795.6 only applies where the court must choose between two regulations that fall between § 795.7 and § 795.16. Section 795.6 does not apply to an apparent conflict between §§ 795.3 and 795.7.

4. At oral argument, defendant's counsel conceded that the record contained no finding on this point. Plaintiffs' counsel invited this court to find that the partners contributed labor, management, and equipment in addition to capital. This court, however, lacks authority to make findings of fact.

Schaad, the Colusa County ASC Executive Director. Mr. Schaad purportedly advised plaintiffs that the joint loan would not pose payment limitation problems. The ASCS Deputy Administrator rejected this claim.

Plaintiffs also invoked 7 C.F.R. § 791.2 for relief:

§ *791.2 The making of loans, purchases, and payments when there has been a failure to fully comply with the program*

In any case in which the failure of a producer to comply fully with the terms and conditions of any program to which this part is applicable precludes the making of loans, purchases, or payments, the Deputy Administrator, State and County Operations, may, nevertheless, authorize the making of such loans, purchases or payments in such amounts as determined to be equitable in relation to the seriousness of the failure. The provisions of this part shall be applicable only to producers who made a good faith effort to comply fully with the terms and conditions of the program and rendered substantial performance. Any person who feels that he or she is entitled to consideration under the provisions of this part may file a request therefor with the County Committee.

7 C.F.R. § 791.2. The Deputy Administrator rejected this claim on the grounds that payment limitation matters do not fall within the scope of this provision.

■■■ Both parties move for summary judgment on these issues. These issues, however, are not ripe for review. Under the "case or controversy" requirement of Article III, federal courts may not issue advisory opinions. *Muskrat v. United States,* 219 U.S. 346, 362, 31 S.Ct. 250, 255, 55 L.Ed. 246 (1911). Courts only may resolve real, concrete, and adverse disputes. *United Public Workers of Am. v. Mitchell,* 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947). Consequently, the ripeness doctrine precludes courts from deciding abstract, hypothetical or premature issues where plaintiff's injury is speculative at best. *Aetna Life Ins. Co. v. Haworth,* 300

U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937).

■■■ Resolving plaintiffs' rights under the equitable provisions of 7 C.F.R. §§ 790 and 791 is premature and hypothetical. The ASCS has not rendered a final decision on the heart of this dispute—the impact of the partnership exception to the per-person payment limitation. The ASCS's decision on that issue may obviate the need for evaluating the availability of equitable relief. This court's decision merely would reflect an opinion about what the law would be if the ASCS hypothetically denied plaintiffs more than one $50,000.00 subsidy. Thus, plaintiffs' claim under these regulations is speculative. The ripeness doctrine bars the exercise of judicial authority. Before resolving this case on broad and vague principles of equity, this court must first ask the ASCS to resolve the payment limitation question.

Further, courts should defer to the expertise of administrative agencies and respect Congress's decision to vest decision-making authority in ASCS. Yet, deciding plaintiff's equity claims at this time would preempt administrative resolution of the substantive issues of this dispute. Consequently, until ASCS renders a final decision on the payment limitation question, this court shall not decide plaintiffs' claims for relief under §§ 790 and 791.

## CONCLUSION

This court denies both motions. Plaintiff correctly contends that ASCS improperly invoked 7 C.F.R. § 795.3 in evaluating plaintiffs' partnerships. Further, ASCS should have reviewed each partner's contribution to the partnership in deciding whether one $50,000.00 payment limitation should apply to plaintiffs.

This court, however, does not grant summary judgment for either party on the question of whether plaintiffs should receive only $50,000.00 in subsidies. The court did not make factual findings necessary for a disposition on this matter. This court remands this action to the Deputy Administrator for further proceedings. Specifically, the ASCS, in cooperation with

the parties, shall address the following issues:

1. Which partners' interests in the Stegall and Southdown partnerships are commensurate with their contributions to the farming operations?

2. What contributions did each partner make? Did these contributions consist substantially of capital?

3. If a partner's contribution consists substantially of capital, is his capital contribution distinct from the joint loan to Stegall Brothers and Southdown? If not, is the partner's capital contribution insufficient to confer separate person status under 7 C.F.R. § 795.7?

The deputy administrator shall make explicit factual findings on each of these issues and shall articulate its decisional rationale. The ASCS shall complete this process on or before May 14, 1990.

The court declines to review the parties' arguments regarding the proper application of 7 C.F.R. §§ 790 and 791. Until proper resolution of plaintiffs' § 795.7 claim, these disputes are not ripe for review.

On or before May 21, 1990, the parties shall file a joint status report apprising the court of whether further judicial proceedings are necessary. This court regrets this protracted process. However, it cannot resolve the issues of this case without complete factual findings.