BAR 9 FARMS, INC., a Texas Corporation, Robert B. Moore Trust, F. Barry Moore Trust, David C. Moore Trust, Anna Patricia Moore Trust, F. Barry Moore, Robert B. Moore, and David C. Moore,

v.

The UNITED STATES.

No. 90–3856C.

United States Claims Court.

Feb. 28, 1992.

Nolan Greak, Lubbock, Tex., for plaintiff.

Thomas P. McLish, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Courtney B. Blair, U.S. Dept. of Agriculture, of counsel.

## OPINION

YOCK, Judge.

This matter is before the Court on the parties' cross-motions for summary judgment.[1] Plaintiffs have brought suit challenging the determination of the Secretary of Agriculture (Secretary), through his designated representatives, that plaintiffs collectively qualified as only two "persons" during crop year 1987 for payment limitation purposes under price support and production adjustment programs administered by the United States Department of Agriculture. Plaintiffs claim that this determination constitutes a breach of contract for which they are entitled to recover damages. The Government argues that the Secre-

tary's decision should be upheld as it was rationally based on the administrative record. For the reasons stated herein, after careful consideration of the administrative record, plaintiffs' motion for summary judgment is denied, defendant's cross-motion is granted, and plaintiffs' complaint is to be dismissed.

### Factual Background

This controversy involves the Price Support and Production Adjustment Program (Program) which is aimed at stabilizing the domestic market for wheat, upland grain, and cotton pursuant to the Agricultural Act of 1949, as amended, 7 U.S.C. § 1421 *et seq.* (1988). The Program subsidizes producers of these crops who qualify for the Program and comply with its restrictions throughout the crop year. In short, the Program pays producers to grow less crop than they otherwise would.

The Program is administered by the Commodity Credit Corporation (CCC) through the Agricultural Stabilization and Conservation Service (ASCS) of the United States Department of Agriculture (USDA). There are three levels of authority under the ASCS: county, state and federal. At the local and state level, the Program is administered by the executive directors of the county and state ASCS committees. The county ASCS office prepares the initial payment limitation decisions, disburses the payments, and makes random checks of compliance with the Program requirements. The county ASCS serves as the first level of review for ASCS Program decisions. The state committees hear appeals from the county ASCS decisions. At the federal level, the Deputy Administrator State and County Operations (DASCO) is the final level of internal administrative review and it supervises the state and county ASCS offices.

Farmers, who are interested in entering the Program, must submit an application, ASCS Form No. 477, to the county ASCS office. This form is an offer to enter into a contract with the CCC, whereby the farmer

---

**1.** Plaintiffs and defendant filed their respective motions for summary judgment on the same day. The Court addresses them as cross-motions for the sake of clarity.

offers to reduce his production of crops in return for Government payments. If the Government accepts the offer, the applicant must sign a contract to participate in the Program. Failure to comply with the terms of the contract may result in the withholding of Program benefits. The farmer must also submit a farm operating plan, ASCS Form No. 561, for purposes of payment limitation review.

ASCS Program payments are governed by the number of "persons" farming who are recognized by the ASCS. 7 C.F.R. Part 795 (1987).[2] The importance of such a determination lies in the general congressional limitation that each "person" shall receive a maximum of one $50,000 payment. Section 1001(1) of the Food Security Act of 1985, Pub.L. No. 99–198, 99 Stat. 1444 (codified at 7 U.S.C. § 1308 (1988)). Section 1001(5)(A)(i) of that Act provides that the Secretary shall issue regulations which define the term "person." In accordance therewith, a "person" for payment limitation purposes has been defined as the following:

Definition of the term "person".

Subject to the provisions of this part, the term "person" shall mean an individual, joint stock company, corporation, association, trust, estate, or other legal entity. In order to be considered a separate person for the purpose of the payment limitation, in addition to the other conditions of this part, the individual or other legal entity must:

(a) Have a separate and distinct interest in the land or crop involved,

(b) Exercise separate responsibility for such interest, and

(c) Be responsible for the cost of farming related to such interest from a fund or account separate from that of any other individual or entity.

7 C.F.R. § 795.3.

The Secretary has also promulgated 7 C.F.R. § 795.14. That regulation states:

Changes in farming operations.

(a) Subject to the provisions of this part, a person may exercise his or her right heretofore existing under law, to divide, sell, transfer, rent, or lease his or her property if such division, sale, transfer, rental arrangement, or lease is legally binding as between the parties thereto. However, any document representing a division, sale, transfer, rental arrangement, or lease which is fictitious or not legally binding as between the parties thereto shall be considered to be for the purpose of evading the payment limitation and shall be disregarded for the purpose of applying the payment limitation. Any change in farming operations that would otherwise serve to increase the number of persons for application of the payment limitation must be bona fide and substantive.

Compliance with ASCS regulations is a prerequisite to price support and production adjustment payments. 7 C.F.R. § 713.-103(b).

Plaintiffs in the instant dispute are Bar 9 Farms, Inc., F. Barry Moore Trust, Robert B. Moore Trust, David C. Moore Trust, Anna Patricia Moore Trust, F. Barry Moore, Robert B. Moore, and David C. Moore. Barry, Robert, David, and Anna Patricia Moore are the adult children of Fred B. Moore, Jr. and Bernice G. Moore. By his last will and testament, Mr. Fred Moore established four separate trusts for his children; each child is the sole beneficiary of the trust which bears his or her name. Barry, his mother and the four trusts formed the Pied Piper Farms partnership in 1970. In 1977, Mrs. Moore sold her partnership interest, in various portions to her children and the trusts. In 1986, Barry, Robert and David Moore formed Bar 9 Farms, Inc., with each brother owning a one-third share. "Moore Brothers" is a partnership composed of Barry and Robert Moore. Prior to 1987, the ASCS office had determined that the three brothers and the Anna Patricia Moore Trust constituted four separate persons for payment limitation purposes.[3]

---

**2.** Unless otherwise noted, all citations to the C.F.R. refer to the 1987 edition.

**3.** The trusts are combined with their sole beneficiaries pursuant to 7 C.F.R. § 795.9(b).

In 1987, Pied Piper Farms, Bar 9 Farms, Inc., the four trusts, and Barry, Robert, and David Moore were farm producers in Stonewall, Fisher, and Jones counties in Texas. Pied Piper Farms, Bar 9 Farms, Inc., the Anna Patricia Moore Trust, the David C. Moore Trust, and Barry, Robert, and David Moore entered into contracts with the CCC to participate in the 1987 price support and production adjustment programs.

The Moore Brothers partnership paid some of Bar 9 Farms' labor costs between February and May, 1987. In addition, Barry, Robert, and David Moore delivered equipment worth $27,300 to Bar 9 Farms on January 23, 1987. On June 27, 1987, Bar 9 Farms wrote a check for the equipment in the amount of $27,300 to Barry, Robert, and David Moore. However, that check was not cashed until December 3, 1987.[4]

In March, 1988, the county ASCS committee sought assistance from the state ASCS office in deciding whether Bar 9 Farms, Inc., was a separate "person" for payment limitation purposes. On July 23, 1988, the state ASCS office determined that Barry, Robert, and David should be combined with Bar 9 Farms as one "person." The state committee took particular note of the three Moore brothers' payment of Bar 9 Farms' labor and of the deferred payment for the equipment. These findings were conveyed to the county ASCS offices on August 2, 1988. Plaintiffs were then notified that the Stonewall County ASCS office had determined, after state office review, that they were only two "persons" for payment limitation purposes, the other "person" being the Anna Patricia Moore Trust.

Plaintiffs appealed this decision to the state ASCS committee. A hearing was held on October 18, 1988. On March 22, 1989, the state committee determined that plaintiffs were properly considered to be two "persons" because no substantive change in the farming operation had taken place, and because the three Moore brothers had effectively financed Bar 9 Farms' operations.[5]

Plaintiffs appealed the state ASCS determination to DASCO on April 5, 1989. On May 7, 1990, DASCO upheld the state committee. DASCO found that no substantive change in operations had occurred and that the three Moore brothers had financed Bar 9 Farms by deferring payment for the equipment. DASCO found that the financing agreement required that Bar 9 Farms, Barry, Robert and David Moore, along with their respective trusts, be treated as one "person" under 7 C.F.R. §§ 795.3 and 795.7. Along with the Anna Patricia Moore Trust, DASCO found that plaintiffs were a total of two "persons."[6] Plaintiffs filed suit in this Court on October 15, 1990, challenging DASCO's decision.

### Discussion

In this action, plaintiffs have filed for summary judgment seeking money damages for a breach of contract alleging that they had substantially complied with all relevant ASCS regulations and, therefore, DASCO's actions were arbitrary and capricious. Defendant filed a cross-motion for summary judgment arguing that DASCO's determinations should be upheld as rationally based on the administrative record.

Where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, the granting of summary judgment is appropriate. *Celotex v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The Court agrees with the parties that no genuine issue of disputed fact exists and concludes that defendant is entitled to judgment as a matter of law.

---

**4.** The negative effect of the Moore Brothers partnership paying some of Bar 9 Farms' labor costs and of the three Moore brothers accepting deferred equipment leasing payments would have upon Bar 9 Farms' "separate person" status could have been easily ascertained by consulting ASCS internal handbook 5–CM.

**5.** Department of Agriculture Administrative Record ("Record"), filed with the Court August 20, 1991, at 96–98.

**6.** Record at 57–59.

## A. Standard of Review

"The Claims Court has jurisdiction to review ASCS determinations concerning price support and crop reduction programs to the extent that plaintiffs are making a claim for money damages under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1988)." *Knaub v. United States*, 22 Cl.Ct. 268, 274 (1991), citing *Willson v. United States*, 14 Cl.Ct. 300, 304 (1988). In *Raines v. United States*, 12 Cl.Ct. 530 (1987), the court explained the limitations on Claims Court review of ASCS decisions as follows:

> Our role in reviewing administrative determinations under section 1429 is concededly "very limited," but not nonexist[ent]: we need not consider the wisdom of the decisions, but must scrutinize whether the officials acted rationally and within their statutory authority.

*Id.* at 536.[7] Moreover, the Court is precluded from reviewing the agency's factual findings. 7 U.S.C. § 1385 (1982). As a result, the Court is limited to review of legal decisions made by the ASCS, including whether a decision is arbitrary and capricious. *Knaub*, 22 Cl.Ct. at 274. Thus, "[t]his court's function is to review the facts as determined by ASCS and to ascertain whether a rational basis in the administrative record underlies the decision reached." *Knaub*, 22 Cl.Ct. at 275.

## B. Financing Rule/Substantive Change Determination

■ Defendant argues that the Court's role in the instant controversy is limited to a review of the facts, as determined by the ASCS, to ascertain whether a rational basis exists in the administrative record for DASCO's decision. The Government asserts that DASCO's decision is rationally based, and defendant is entitled to judgment as a matter of law.

Plaintiffs challenge the Secretary's determination of their status on essentially three grounds. First, that Barry, Robert, and David Moore were partners in Pied Piper Farms and, therefore are subject to 7 C.F.R. § 795.7 instead of 795.3. Second, plaintiffs argue that section 795.3 is inapplicable as section 795.4 provides that a corporation cannot be denied separate person status solely on the basis of family financing. Third and finally, plaintiffs argue that the Secretary's decision was arbitrary and capricious in light of the substantial change in plaintiffs' farming operations, ASCS handbook examples which imply that stockholder loans to a corporation are permissible, and Bar 9 Farms' status as a Subchapter S corporation for tax purposes.

### 1. The Pied Piper Farms Partnership

Plaintiffs argue that under *Stegall v. United States*, 19 Cl.Ct. 765 (1990), Barry, Robert, and David, as partners in the Pied Piper Farms Partnership, are subject to 7 C.F.R. § 795.7 (the partnership section) only and are not subject to the financing/combination rule contained in 7 C.F.R. § 795.3. In *Stegall*, two partnerships received a joint loan and DASCO determined that this required the combining of all the partners of both partnerships into a single "person" under 7 C.F.R. § 795.3. In remanding the decision to DASCO, the court ruled that partnerships were to be evaluated under section 795.7, which allows a legitimate partnership to receive more than $50,000 in subsidies. Plaintiffs contend that the three Moore brothers, as partners in Pied Piper Farms, should likewise be subject to section 795.7 instead of section 795.3. This Court finds, however, that *Stegall* is inapposite to the instant case.

Under section 795.3, a " 'person' shall mean an individual, joint stock company, corporation, association, corporation, association, trust, estate, or other legal entity." In order to be accorded separate "person" status, the entity must:

> (a) Have a separate and distinct interest in the land or crop involved,

---

7. 7 U.S.C. § 1429 (1982) provides in part: "Determinations made by the Secretary under this Act shall be final and conclusive: *Provided,* That the scope and nature of such determinations shall not be inconsistent with the provisions of the Commodity Credit Corporation Charter Act * * *." (Emphasis in original.)

(b) Exercise separate responsibility for such interest, and

(c) Be responsible for the cost of farming related to such interest from a fund or account separate from that of any other individual or entity.

7 C.F.R. § 795.3.

Under § 795.7, a partnership is not considered a person but,

> *notwithstanding the provisions of § 795.3,* each individual or other legal entity who shares in the proceeds derived from farming by such joint operations shall be considered a separate person, except as otherwise provided in this part, and shall be listed as a producer for payment purposes on program documents.

7 C.F.R. § 795.7 (emphasis added). Thus, a partnership is not subject to the same financing restraints as are individuals and other entities.

DASCO determined that plaintiffs violated section 795.3 when the three Moore brothers paid for Bar 9 Farms' labor and accepted deferred payment on the equipment. However, plaintiffs are now trying to use their status as partners in nonplaintiff Pied Piper Farms to avoid the application of 795.3 to the brothers' financing arrangements with the Bar 9 Farms corporation. This is an entirely different situation from *Stegall*, where the partners in the farming operation at issue were precluded from separate person treatment. In the instant case, the rules governing corporations apply to the status of Bar 9 Farms, Inc., and its shareholders.

Under 7 C.F.R. § 795.8, a corporation is a separate person and an individual shareholder "may be considered as a separate person to the extent such stockholder is engaged in the production of the crop as a separate producer *and otherwise meets the requirements of § 795.3 * * *." Id.* (Emphasis added.) Thus, even if the partners of Pied Piper Farms were "separate producers," the shareholders of Bar 9 Farms, Inc. (Barry, Robert, and David Moore), must still comply with the requirements of section 795.3. *Stegall*, section 795.7, and the Pied Piper partnership have nothing to

do with the Moore's compliance with the separate financing rules. Because the three Moore brothers violated the financing rule of section 795.3, they were not "separate producers," and thus were appropriately combined with Bar 9 Farms, Inc.

2. The Family Member Exception

Plaintiffs next argue that a corporation cannot be denied separate person status solely on the basis that a family member loans or gives money or equipment to the corporation where the family members were organized as separate units prior to December 31, 1985. Under 7 C.F.R. § 795.8,

> A corporation * * * shall be considered as one person, and an individual stockholder of the corporation may be considered as a separate person to the extent that such stockholder is engaged in the production of the crop as a separate producer and otherwise meets the requirements of § 795.3, except that a corporation in which more than 50 percent of the stock is owned by an individual * * * or by a legal entity, shall not be considered as a separate person from such individual or legal entity.

*Id.* Thus, according to the plaintiffs, since Barry, Robert, and David each owned less than 50 percent of Bar 9 Farms, the corporation and the brothers should be considered separate "persons" if they otherwise satisfy the requirements of section 795.3.

As explained above, section 795.3 requires that an entity must be responsible for the cost of farming from a fund or account separate from that of any other entity in order to qualify as a separate "person" for payment limitation purposes. Plaintiffs argue that 7 C.F.R. § 795.4 (1988) creates an exception for family members to the financing rules of section 795.3. Section 795.4 provides that,

> Effective for the 1987 through 1990 crops, an individual shall not be denied a determination that such individual was a "person" solely on the basis that:

> (a) A family member co-signs for, or makes a loan to, such individual and leas-

es, loans or gives equipment, land or labor to such an individual; and

(b) Such family members were organized as separate units prior to December 31, 1985.

*Id.* Plaintiffs contend that when the three Moore brothers paid Bar 9 Farms' labor costs and accepted deferred payment from Bar 9 Farms for equipment, they were simply making a family loan under section 795.4. The Court disagrees.

It is clear that section 795.4 was intended to allow interfamily financial cooperation. By its terms, section 795.4 protects "individuals" and not corporate entities from the strict confines of section 795.3. It is true that a corporation may be considered a "person" for payment limitation purposes. However, a corporation cannot be considered an individual with family members. Bar 9 Farms, Inc., has shareholders but not siblings. A loan to a corporation is not the same as a loan to the corporation's shareholders. When the three Moore brothers loaned money and equipment to Bar 9 Farms, Inc., they were not loaning money to their family members. Plaintiffs argument to the contrary indicates clearly that the Moores did not view Bar 9 Farms, Inc., as being distinct from the individuals. Neither did the Secretary and neither does the Court.

Plaintiffs alternatively argue that they did not violate section 795.3 as the amount of financing involved was "insignificant." Plaintiffs cite no authority allowing for "insignificant" violations of the financing regulations. Moreover, Robert and Barry Moore covered Bar 9 Farms' labor costs for some four months, which can hardly be considered insignificant.

3. Plaintiffs' Remaining Arguments that DASCO's Decision was Arbitrary and Capricious

Plaintiffs argue that DASCO's decision was arbitrary and capricious for three reasons: (a) that an amendment to an internal ASCS handbook provides that a substan-

tive change occurred in the farming operations in the instant case; (b) that the handbook allows a stockholder to sign for a corporate loan and, therefore, stockholders should be allowed to make loans to the corporation; and (c) that whether the equipment was owned by the corporation or its shareholders is irrelevant because Bar 9 Farms is a Subchapter S corporation for tax purposes.

(a) *Substantive Change*

▪ Plaintiffs contend that DASCO failed to take into account the substantive change in farming operations which occurred during crop year 1987. Any changes in farming operations which increase the number of "persons" for payment limitation purposes must be "bona fide and substantive." 7 C.F.R. § 795.14. Plaintiffs point to the following hypothetical question from a Texas amendment to ASCS handbook 5–CM in support of its argument that there was a substantive change in farming operations:

1 Q. If there is no change in the size of the farming operation of the previous individual or entity, can the purchase of land previously rented be considered a substantive change?

A. The purchase of land by an individual or entity involved in the farming operations would be considered a substantive change only if the purchase was made by an individual or entity, entering the farming operation for the first time.

Texas Notice 5–CM–7, CM–75. Plaintiffs argue that Bar 9 Farms' purchase of farm land shortly after its incorporation amounts to a substantive change for crop year 1987 under the ASCS handbook.

The Government argues that, even assuming that the Bar 9 Farms' land purchase was a substantive change, the Court must still determine whether plaintiffs' actions during 1987 violate payment limitation regulations. The DASCO so found and this Court agrees.[8] The substantive

---

**8.** Even if a substantive change was found (which it was not), the financing rule under section 795.3, being more restrictive, would re-

quire the combination of Bar 9 Farms, Inc., with the individuals. 7 C.F.R. § 795.6.

change principle is used to determine the validity of transactions which would result in the increase of the number of persons for payment limitation purposes. The transaction contemplated in the handbook hypothetical is the transfer of land, not the commingling of funds and assets, which is clearly prohibited by section 795.3. Thus, plaintiffs must still overcome DASCO's finding that the three Moore brothers' payment of Bar 9 Farms' labor costs and equipment loan violated section 795.3.

### (b) *Stockholder Loans to Corporations*

Plaintiffs rely on another handbook hypothetical question to show that the Bar 9 Farms' financing arrangements should not violate section 795.3:

11 Q. Can a stockholder in a corporation sign as an individual for the corporate loan?

A. Yes, if the lending institution requires the signature of ALL the stockholders in the corporation and the stockholders do not pledge any of their individual assets as security for the corporation's loan.

Texas Notice 5–CM–7, CM–75, December 22, 1986. Plaintiffs assert that there is no rational basis for prohibiting loans from stockholders to corporations when stockholders are allowed to sign for loans to corporations from a lending institution. The Court disagrees.

The handbook provision quoted above expressly distinguishes between the mere signing for a loan and the commitment of individual stockholder's funds to a corporation. It is the latter scenario that is presented in the instant case. The three Moore brothers extended their own funds and assets to the Bar 9 Farms corporation, thereby blurring the distinction between the individuals and the corporate entity. Had the three Moore brothers merely arranged for a loan from a private lending institution, rather than committing their own funds to Bar 9 Farms, the analogy to the handbook hypothetical would be more apt.

Plaintiffs argument also fails as it challenges the rationality of the regulations and not DASCO's application of them. Plaintiffs do not provide any basis for finding the regulations invalid, but merely suggest that they are "not consistent and not rational." [9] A similar challenge to the same regulations was considered and rejected in *Knaub*, wherein the Court stated:

[T]his court must apply the law as passed by Congress and the regulations as promulgated by USDA in effect at the times in question. The alleged unsuitability of the law and regulations is not before this court, but is rather an issue to be resolved by Congress and USDA.

22 Cl.Ct. at 275 n. 6.

### (c) *Bar 9 Farms, Inc.'s Tax Status*

 Plaintiffs assert that the financing arrangements found objectionable by DASCO have no effect on Bar 9 Farms' tax status as a Subchapter S corporation and, therefore, should have no effect upon its status as a "person" for payment limitation purposes. Plaintiffs cite no authority for the proposition that Internal Revenue Service regulations modify or control those of the Department of Agriculture. In the absence of support for plaintiffs' novel approach, the Court will not disturb DASCO's findings. In view of the above discussion, this Court finds the DASCO's decision in this matter to be rational.

### CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted, plaintiffs' motion for summary judgment is denied, and the complaint will be dismissed.

No costs.

---

9. Pl.Mot. for Summary Judgment at 2.